# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| 800 COOPER FINANCE, LLC, | : | Civil Action No. 16-736 (JHR/JS) |
| Plaintiff, | : | |
| v. | : | |
| SHU-LIN LIU, et al., | : | |
| Defendants. | : | |
| | : | |
| KL HOLDINGS, INC., SHU-LIN LIU AND JOLIN CHIAOLIN TSAO, | : | Civil Action No. 17-456 (JHR/JS) |
| Plaintiffs, | : | **OPINION** |
| v. | : | |
| 800 COOPER FINANCE, LLC, JIMMY KWONG, KATHARINA M. GREGORIO, and John Does 1-5, | : | |
| Defendants. | : | |

The Delaware Limited Liability Act provides rules for suing a dissolved limited liability company ("LLC") that improperly distributed LLC assets when winding up. Counterclaim Defendants 800 Cooper Finance, LLC ("800 Cooper Finance"); Jimmy Kwong ("Kwong"); and Katharina M. Gregorio ("Gregorio") (collectively "Counterclaim Defendants") move for partial summary judgment, [Dkt. 128],[1] arguing that Counterclaim Plaintiffs KL Holdings, Inc., Shu-Lin

---

[1] Although Counterclaim Defendants filed this motion in connection with the 17-456 matter, the motion was docketed in the related 16-736 matter. Thus, record citations refer to docket entries in the 16-736 matter.

Liu, and Jolin Chiaolin Tsao ("Counterclaim Plaintiffs") have not followed these rules. For the reasons set forth below, the Court agrees and will grant Counterclaim Defendants' motion.

## I. Introduction

Counterclaim Plaintiffs seek to recover funds that Counterclaim Plaintiffs paid to 800 Cooper Finance to obtain release from a series of loans. Between 2005 and 2011, KL Holdings obtained two business loans and a line of credit for $801,000, collectively, from PNC Bank (collectively "the Loans"). [SUMF ¶¶ 6–11].[2] KL Holdings secured the Loans with a parcel of real estate in Camden, New Jersey referred to as the "Bridgeview Property." [SUMF ¶ 14].

In 2015, KL Holdings entered an agreement with Kamgirsons, Inc. ("Kamgirsons") to sell the Bridgeview Property to Kamgirsons. [Dkt. 144-1 ¶ 9]. Kwong was a principal for Kamgirsons. [Dkt. 105-1 ¶ 9]. After receiving information about the Loans and the Bridgeview Property during negotiations, Kamgirsons cancelled the agreement of sale and withdrew from negotiations. [*Id.*]. 800 Cooper Finance, an LLC organized under Delaware law, then purchased the Loans from PNC Bank. [Dkt. 128-2 ¶ 0].[3] Gregorio was the Manager of 800 Cooper Finance [Dkt. 144 ¶ 4], and Kamgirsons was 800 Cooper Finance's sole member at the time of purchase. [SUMF ¶ 24]. Kamgirsons then assigned its entire membership interest in 800 Cooper Finance to KVest Camden, LLC ("KVest"), a Delaware LLC, making KVest the sole member of

---

[2] "SUMF" refers to the statement of undisputed material facts submitted in connection with Counterclaim Defendants' motion pursuant to Local Rule 56.1.

[3] Counterclaim Defendants' statement of undisputed material facts lists paragraph "0" between paragraphs 22 and 23. The Court uses this numbering here for consistency.

800 Cooper Finance.[4] [SUMF ¶ 24]. Kwong was KVest's managing member, [Dkt. 144-4 at 3], and Gregorio was a non-managing member.[5] [Dkt. 144-4 at 2].

On February 10, 2016, 800 Cooper Finance filed a complaint in this Court against Counterclaim Plaintiffs seeking "confession of judgment" after KL Holdings allegedly defaulted on the Loans for failing to make timely payments. [*See generally* Dkt. 1]. Counterclaim Plaintiffs disputed—and continue to dispute—that they defaulted on the Loans and the amount due to 800 Cooper Finance. [*See* Dkt. 144 at 5; Dkt. 54 ¶¶ 8–13]. But Counterclaim Plaintiffs wanted to sell the Bridgeview Property to a third-party and could not do so until 800 Cooper Finance released its security interest in the Bridgeview Property. Counterclaim Plaintiffs allege that 800 Cooper Finance used the security interest to hold Counterclaim Plaintiffs hostage and refused to release its interest until Counterclaim Plaintiffs met 800 Cooper Finance's "excessive" demands. [Dkt. 144 at 34–35; Dkt. 54 ¶¶ 12, 16–17]. Counterclaim Plaintiffs obtained a bridge loan from another lender and paid the amount that 800 Cooper Finance claimed was due on the Loans, even though Counterclaim Plaintiffs believed that the loan payoff amount exceeded the amount owed. [Dkt. 54 ¶¶ 17–18]. The Court will refer to the funds that Counterclaim Plaintiffs paid to obtain the release as the "Loan Payoff Funds."

After receiving payment from KL Holdings, Gregorio signed and filed a Certificate of Cancellation for 800 Cooper Finance with the Delaware Secretary of State, Division of Corporations. [Dkt. 144-11 at 2]. Gregorio executed the certificate on December 31, 2016 and

---

[4] KVest's operating agreement states that its purpose was to "acquire, hold, own, develop, invest in, improve, operate, maintain, assign, sell, convey, lease, mortgage, dispose of and otherwise deal with" the Loans and the Bridgeview Property. [Dkt. 144-4 at 2].

[5] KVest's operating agreement lists the first names of five other members but these names were the subject of a discovery dispute an unavailable to the Court at the time of briefing. [Dkt. 144-4 at 2].

3

filed it on January 3, 2017. [*Id.*]. By the time 800 Cooper Finance dissolved, the Loan Payoff Funds had been distributed to KVest, 800 Cooper Finance's sole member. [Dkt. 144-5 at 10]. Because Kwong and Gregorio were both members of KVest, they received a portion of these distributions. [*Id.* at 12; Dkt. 144-6 at 6–7]. Kwong executed a certificate of cancellation for KVest on December 31, 2016, which was filed on January 6, 2017. [Dkt. 144-12 at 2]. On July 27, 2017 counsel for 800 Cooper Finance voluntarily dismissed the suit against Counterclaim Plaintiffs. As this chronology makes clear, 800 Cooper Finance and KVest wound up before 800 Cooper Finance dismissed its suit against Counterclaim Plaintiffs.

After Counterclaim Plaintiffs obtained the release, they moved to amend their answer to 800 Cooper Finance's complaint against them to assert counterclaims against 800 Cooper Finance. [*See* Dkt. 42]. Judge Schneider granted the motion, and Counterclaim Plaintiffs asserted counterclaims against 800 Cooper Finance alone for breach of contract, conversion, and unjust enrichment (Counterclaims I–III, respectively). Counterclaim Plaintiffs also filed counterclaims against 800 Cooper Finance, Kwong, and Gregorio for "improper cancellation of 800 Cooper Finance, LLC" and improper distribution of LLC assets (Counterclaims IV–V, respectively). [*See* Dkt. 54]. Counterclaim IV asserts that 800 Cooper Finance was improperly dissolved under Delaware law because Counterclaim Defendants distributed all of the LLC's assets without setting aside reserve funds for Counterclaim Plaintiffs' putative claims against 800 Cooper Finance. [*Id.*]. Counterclaim V claims that Kwong and Gregorio knowingly received improperly distributed funds in violation of Delaware law. [*Id.*].

Counterclaim Defendants filed the present motion for partial summary judgment on Counterclaims IV and V as to Kwong and Gregorio only. [Dkt. 128]. The Court held oral argument on this motion on March 2, 2022. [*See* Dkt. 160].

## II. Legal Standard

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *accord* Fed. R. Civ. P. 56(c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *Id.* In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.*; *Maidenbaum v. Bally's Park Place, Inc.*, 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Andersen*, 477 U.S. at 256–57.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

### III. Analysis

#### a. Choice of Law

As a Court sitting in diversity jurisdiction, the Court must determine which state's law will apply to the issues raised in Counterclaim Defendants' motion. *See Curtiss-Wright Corp. v. Rodney Hunt Co., Inc.*, 1 F. Supp. 3d 277, 283 (D.N.J. 2014) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). To do so, the Court must apply the choice of law rules of the forum state, namely, New Jersey. *Id.* New Jersey courts have adopted the two-prong "most significant relationship" test from the Restatement (Second) of Conflict of Laws. *P.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008). "The first prong of the analysis requires courts to examine the substance of the potentially applicable laws to determine if an actual conflict exists." *Curtiss-Wright*, 1 F. Supp. 3d at 283 (citation omitted). If the laws do not conflict, "the court need not engage in further choice-of-law analysis, and may instead refer to the states' laws interchangeably." *Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 404 (3d Cir. 2016). If a conflict exists, the Court must determine which state has the "most significant relationship" to the claim. *Curtiss-Wright*, 1 F. Supp. 3d at 283 (citing *P.V.*, 962 at 460).

Throughout their briefing, the parties cite to and rely on Delaware law but do not explain why Delaware law should apply. Neither side identifies a conflict between Delaware and the law of any other interested state, and Counterclaim Defendants argue that Delaware law and New Jersey law are the same with respect to all relevant issues. [*E.g.* Dkt. 128-2 at 14 n.2].

Following New Jersey's choice-of-law rules, the Court will apply Delaware law to the present motion for two reasons. First, the parties do not identify any conflict between the laws of New Jersey and Delaware, the states with a connection to Counterclaims IV and V. The Court can therefore refer to the relevant law of these states "interchangeably." *Auto–Owners Ins.*, 835 F.3d at 404. Even if a conflict existed, the internal affairs doctrine would require application of Delaware law.

> The internal affairs doctrine serves as a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands.

*Krys v. Aaron*, 106 F. Supp. 3d 472, 484 (D.N.J. 2015) (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (U.S. 1982)). "New Jersey courts adhere to this doctrine, and direct that 'the law of the state of incorporation [governs] internal corporate affairs.'" *Id.* (quoting *Fagin v. Gilmartin*, 432 F.3d 276, 282 (3d Cir. 2005)) (citation omitted).

While the internal affairs doctrine "is not without exception," *id.* at 485, it requires the application of Delaware law to the claims at issue presently. As noted above, 800 Cooper Finance was a Delaware LLC that was dissolved when Kwong filed certificate of cancellation with the Delaware Secretary of State. Further, Counterclaims IV and V allege that Counterclaim Defendants violated Delaware LLC law when winding down 800 Cooper Finance by failing to set aside reserve funds during dissolution and improperly distributing funds to members. As such, these claims address 800 Cooper Finance's internal affairs during its dissolution. Although the other counterclaims concern the Loans and Bridgeview Property located in New Jersey, "[t]hat physical contacts exist elsewhere 'does not render less important the legally-designated home of the entity for purposes of (1) its existence as an entity, and most critically, (2) its

7

relations among itself, its governing fiduciaries, and its investors.'" *Coface Collections N. Am. Inc. v. Newton*, 430 F. App'x 162, 167 (3d Cir. 2011) (quoting *Total Holdings USA, Inc. v. Curran Composites, Inc.*, 999 A.2d 873, 883 (Del. Ch. 2009)).  Because 800 Cooper finance was formed and dissolved under Delaware law, and because Counterclaims IV and V allege violations of Delaware LLC law that concern 800 Cooper Finance's internal operations, the Court would apply Delaware law when deciding Counterclaim Defendants' motion even if Delaware law conflicted with New Jersey law.

      **b. Analysis**

Two general principles of Delaware LLC law shape this dispute.  First, Delaware law generally insulates members and managers of an LLC from liability for an LLC's obligations "solely" because of their membership in the LLC.  Del. Code Ann. tit. 6 § 18-303(a).  Thus, for Kwong and Gregorio to be held personally liable, Counterclaim Plaintiffs must show that this general rule does not apply to Kwong and Gregorio's conduct or that some exception does apply.

Second, "absent statutory authority, no claim may be brought against a dissolved entity.  Moreover, § 18–803(b) of the LLC Act provides that suit generally may be brought by or against a limited liability company only until the certificate of cancellation is filed." *Metro Comm'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 138 (Del. Ch. 2004) (citations omitted).  Plaintiffs who wish to sue and recover from an LLC after the certificate of cancellation has issued must first "seek[] to have the company's certificate of cancellation nullified on the ground that the company was not 'wound up' in compliance with Delaware law." *Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502, 520 (S.D.N.Y. 2012) (citations omitted).

Though they are not at issue in the present motion, Counterclaims I–III allege breach of contract, conversion, and unjust enrichment, respectively, against 800 Cooper Finance. But, as noted above, Gregorio executed 800 Cooper Finance's certificate of cancellation on December 31, 2016, and the cancellation completed on January 7, 2017. Thus, in order to succeed on Counterclaims I–III, Counterclaim Plaintiffs must successfully nullify 800 Cooper Finance's certificate of cancellation. On the Court's reading, Counterclaim IV seeks to accomplish this necessary step in sustaining Counterclaims I–III against 800 Cooper Finance.

Counterclaim IV alleges that nullification is proper because 800 Cooper Finance was not "wound up in compliance with" Del. Code Ann. tit. 6 § 18-804(b)(3). Section 18-804(b)(3) requires dissolving companies to

> make such provision as will be reasonably likely to be sufficient to
> provide compensation for claims that have not been made known
> to the limited liability company or that have not arisen but that,
> based on facts known to the limited liability company, are likely to
> arise or to become known to the limited liability company within
> 10 years after the date of dissolution.

*Id.* § 18-804(b)(3). Counterclaim Plaintiffs argue that 800 Cooper Finance violated this rule by winding up while its case against Counterclaim Plaintiffs was pending and by distributing all of its assets to its members without setting aside reserves for Plaintiffs' potential claims against 800 Cooper Finance. Counterclaim Plaintiffs argue that they can sue Kwong and Gregorio—in addition to 800 Cooper Finance—to have the certificate of cancellation nullified because Kwong and Gregorio exerted their control over 800 Cooper Finance to distribute all of the LLC's assets, and did not set aside funds for Counterclaim Plaintiffs' claims against 800 Cooper Finance. [Dkt. 144 at 23]. Count V alleges that Kwong and Gregorio can be held personally liable because they received a portion of the distributions through their membership in KVest, 800 Cooper Finance's sole member. [*Id.*]. Defendants argue that Plaintiffs must sue 800 Cooper

9

Finance to obtain this nullification under Delaware statute, and cannot sue Kwong and Gregorio individually.

The Court agrees with the Counterclaim Defendants. On its face, § 18-804(b) addresses LLCs themselves rather than their individual members or officers. ("A limited liability which has dissolved … shall…."). For this reason, the few courts that have applied § 18-804(b) have found that this provision does not create a cause of action against individual defendants. *See Cloutier v. Klein*, No. 119CV266AJTJFA, 2019 WL 8888174, at *5 (E.D. Va. May 24, 2019) ("The proper remedy for a creditor to recover claims against a dissolved LLC that violated 6 Del. Code § 18-804(b)(3) is not to hold its former directors personally liable, but rather to seek revocation or nullification of the certificate of cancellation, 'which effectively revives the LLC and allows claims to be brought by and against it.'" (quoting *Matthew v. Laudamiel*, 2012 WL 605589, at *22 n.148 (Del. Ch. Feb. 21, 2012))).

*A.G. Global Consulting Inc. v. GlobalOptions Group, Inc.* is instructive. No. 10 CIV. 3832 (JSR), 2010 WL 11712993, at *1 (S.D.N.Y. Oct. 26, 2010). There, the plaintiff sued the former managing member of an LLC individually for improperly winding down the LLC under § 18-804. *Id.* Like the Counterclaim Plaintiffs here, the plaintiff in *A.G. Global Consulting* alleged that the dissolved LLC owed the plaintiff money and that its managing member avoided this debt by selling the LLC's assets and winding down the LLC. *Id.* The court found that the claim against the managing member was "fatally flawed" because "such claims may only be asserted" against the LLC itself. *Id.*

Based on § 18-804(b)'s text and the cases applying it, the Court agrees with Counterclaim Defendants that Plaintiffs cannot sue Kwong or Gregorio individually to reinstate 800 Cooper Finance under § 18-804(b)(3) for failure to make adequate provisions when winding

10

down 800 Cooper Finance.  The Court will therefore grant Kwong and Gregorio's motion as to Counterclaim IV.

Counterclaim V seeks to hold Kwong and Gregorio individually liable under § 18-804(c) for unlawfully receiving distribution of 800 Cooper Finance's assets.  Section 18-804(c) states that "[a] member who receives a distribution in violation of subsection (a) of this section, and who knew at the time of the distribution that the distribution violated subsection (a) of this section, shall be liable to the limited liability company for the amount of the distribution."  Subsection (a) states that, when winding up, LLC's must first distribute assets to creditors "to the extent otherwise permitted by law, in satisfaction of liabilities of the limited liability company … other than liabilities for which reasonable provision for payment has been made."  Del. Code Ann. tit. 6 § 18-804(a)(1).  Counterclaim Plaintiffs argue that, because the Loan Payoff Funds unlawfully passed from 800 Cooper Finance through KVest—800 Cooper Finance's sole member—to Kwong, Gregorio, and KVest's other members, Counterclaim Plaintiffs can sue Kwong and Gregorio individually to recover those funds.

The Court rejects this argument.  On one hand, the Court agrees with Counterclaim Plaintiffs that § 18-804(c) generally permits claims against individual members of an LLC who receive improper distributions.  *See Cloutier*, 2019 WL 8888174, at *5 ("[T]he only personal liability provided for in § 18-804 is the liability, in certain circumstances, of members who received an improper distribution in connection with a dissolution that violated the requirements of § 18-804.").  However, as Counterclaim Defendants argue, § 18-804(c)'s plain language exposes two flaws in Counterclaim Plaintiffs' attempt to hold Kwong and Gregorio individually liable under § 18-804(c).

11

First, § 18-804(c) only permits suit against "members" who receive an unlawful distribution. Plaintiffs concede that Kwong and Gregorio were not members of 800 Cooper Finance, and that KVest is 800 Cooper Finance's sole member. [*See* Dkt. 144 at 15]. Counterclaim Plaintiffs argue that Kwong and Gregorio can nevertheless be held individually liable because "Kwong, as the Managing Member of KVest … and Gregorio, as Manager of 800 Cooper … caused and effectuate[d] the cancellation of 800 Cooper." [Dkt. 144 at 15]. But Counterclaim Plaintiffs have not cited any authority for the proposition that an LLC's manager or the controlling member of an LLC's sole member are "members" of an LLC as a matter of Delaware corporate law. Counterclaim Plaintiffs also argue that Kwong and Gregorio can be held individually liable under § 18-804(c) because they used their control over 800 Cooper Finance and KVest to execute "a scheme to hide" the Loan Payoff Funds. [Dkt. 144 at 23]. But Counterclaim Plaintiffs have not identified any authority stating that a non-member's exercise of control over an LLC to engage in unfair or malicious conduct makes that non-member a "member" for the purposes of § 18-804(c).[6] Ultimately, Counterclaim Plaintiffs have not persuaded the Court that Kwong or Gregorio are "members" of 800 Cooper Finance for the purposes of 18-804(c) when 800 Cooper Finance's operating agreement does not identify them as members.

---

[6] While courts may pierce an LLC's corporate veil under "exceptional circumstances" to hold individuals or another company liable, *see Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 706–10 (Del. Ch. 2021), the counterclaims as stated in the Amended Answer do not allege or mention veil piercing as theory for holding Kwong or Gregorio individually liable. Moreover, Plaintiffs explicitly argue that they do not seek to hold Kwong or Gregorio individually liable as "members" by piercing KVest's corporate veil, and they do not believe veil piercing is necessary to reach Kwong or Gregorio under § 18-804(c) at this juncture. [Dkt. 144 at 30].

Second, § 18-804(c) bars Counterclaim Plaintiffs from suing Kwong and Gregorio directly. Section 18-804(c) states that individual members can be held personally liable "*to the limited liability company* for the amount of the distribution." (emphasis added). Counterclaim Plaintiffs appear to understand this, as they argue that "§ 18-804(c) requires that any member who received the unlawful distribution return that distribution to the now-revived LLC so that the LLC can face the claims against it." [Dkt. 144 at 20]. But Counterclaim Plaintiffs assume that § 18-804(c) permits *them* to sue 800 Cooper Finance's members directly to have the funds restored to 800 Cooper Finance. Delaware law undermines this assumption.

According to the Delaware Chancery Court,

> [a]fter the filing of the certificate of cancellation, such claims [against LLC members] must be brought in the name of the LLC by a trustee or receiver appointed under 6 Del. C. § 18–805, or directly by the LLC or derivatively by its members after reviving the LLC by obtaining revocation of its certificate of cancellation.

*Matthew*, 2012 WL 605589, at *21; *see also A.G. Glob. Consulting*, 2010 WL 11712993, at *1 (holding that claims alleged directly were "fatally flawed" because "the governing Delaware law provides that such claims may only be asserted in derivative actions." (citing Del. Code Ann. tit. 6 § 18-804(c))). Counterclaim Plaintiffs do not allege or argue that they are suing on behalf of 800 Cooper Finance. Nor do they argue that they are "members" or "assignees" of 800 Cooper Finance who are eligible to bring such claims on behalf of the LLC. *CML V, LLC v. Bax*, 28 A.3d 1037, 1041 (Del. 2011), *as corrected* (Sept. 6, 2011) ("[T]he LLC Act, by its plain language, exclusively limits derivative standing to 'member[s]' or 'assignee[s]'…."). Counterclaim Plaintiffs also fail to invoke the Delaware Code provision concerning the appointment of a trustee or receiver. *See R & R Cap., LLC v. Buck & Doe Run Valley Farms, LLC*, No. CIV.A. 3803-CC, 2008 WL 3846318, at *6 (Del. Ch. Aug. 19, 2008) ("[S]ection 18-

805 specifically permits creditors to petition the Court for the appointment of a receiver for a canceled limited liability company."). Thus, while Counterclaim Plaintiffs are correct that § 18-804(c) permits claims against individual LLC "members," Counterclaim Plaintiffs cannot circumvent the Delaware Code's procedural requirements for recovering improperly distributed LLC assets by suing Kwong and Gregorio directly.

Counterclaim Plaintiffs' counsel asserted during oral argument that, even though the deficiencies in their claims against Kwong and Gregorio individually are apparent in the plain language of § 18-804, the Court should not credit Counterclaim Defendants' § 18-804 arguments because Counterclaim Defendants raised them for the first time in their reply brief.[7] Counterclaim Plaintiffs did not move to strike the reply brief and raised this concern for the first time at oral argument. Nevertheless, counsel offered arguments to oppose Counterclaim Defendants' position with respect to § 18-804.

According to Counterclaim Plaintiffs, denying direct claims and individual liability against Kwong and Gregorio will undermine § 18-804, which requires LLCs to set aside money for creditor obligations, and permits LLCs to recover funds improperly distributed to members. Counterclaim Plaintiffs argued that "there are consequences" for violations of that statutory scheme, but that Counterclaim Defendants' interpretation of § 18-804 as discussed above would mean that "there are no consequences" for Kwong and Gregorio for improperly cancelling 800 Cooper Finance and receiving improperly distributed funds at this juncture.

As stated during oral argument, the Court disagrees. The Court does not find that Counterclaim Plaintiffs can *never* succeed on claims against Kwong and Gregorio, or that § 18-

---

[7] This discussion relies on and incorporates the arguments presented during the March 2, 2022 oral argument.

804 insulates Kwong and Gregorio from ever having to repay funds. The Court merely finds that Delaware statute sets forth a process for recovering funds improperly distributed to LLC members, and this process precludes Counterclaim Plaintiffs from asserting direct claims against Kwong and Gregorio individually to revive 800 Cooper Finance or recover improperly distributed funds.

At the March 2, 2022 hearing, Counsel for Counterclaim Plaintiffs also raised statute of limitations concerns as to the Court's interpretation of § 18-804. Specifically, Counsel argued that if Counterclaim Plaintiffs must jump through all of the procedural hoops necessary to bring a claim for receipt of improper distributions against Kwong and Gregorio directly, and the Court does not preserve that claim here, Counterclaim Plaintiffs may be time barred from bringing such a claim. Counterclaim Plaintiffs' concerns are presumably grounded in § 18-804(d) which states:

> Unless otherwise agreed, a member who receives a distribution from a limited liability company to which this section applies shall have no liability under this chapter or other applicable law for the amount of the distribution after the expiration of 3 years from the date of the distribution unless an action to recover the distribution from such member is commenced prior to the expiration of the said 3-year period and an adjudication of liability against such member is made in the said action.

Del. Code Stat. Ann. tit. 6 § 18-804(d). Counterclaim Plaintiffs argued that they asserted direct claims against Kwong and Gregorio individually with this statute of limitations in mind. In their briefing, Counterclaim Plaintiffs also claim that they only discovered that KVest was a member of 800 Cooper Finance "years after the litigation was commenced." [Dkt. 144 at 6]. If true, this claim suggests that Counterclaim Plaintiffs could not have raised claims against KVest—as the sole member of 800 Cooper Finance—or its members when they filed their Counterclaims.

15

This statute of limitations is irrelevant to the issues in this motion, namely, whether Delaware law permits the direct claims alleged in Counterclaim Plaintiffs' Amended Answer against Kwong and Gregorio individually under §§ 18-804(b) and (c). Nothing in § 18-804(d) permits Counterclaim Plaintiffs to bring claims that do not comport with §§ 18-804(b) or (c), or other provisions of the Delaware LLC statute. Without considering whether § 18-804(d) otherwise affects Counterclaim Plaintiffs' ability to recover in this suit, the Court rejects their position as raised at oral argument.

Finally, during the March 2, 2022 hearing, Counterclaim Plaintiffs repeated an argument raised in their briefing that Delaware LLC law does not necessarily insulate Kwong and Gregorio from individual liability. [*See* Dkt. 144 at 20–21]. In their brief, Counterclaim Plaintiffs argue that a member's liability "to return a distribution made in violation of [§ 18-804] is separate and discrete from an argument that a member is liable for the LLC's obligations." [*Id.* at 21]. The Court agrees with this argument in principle. But, as discussed above, Counterclaim Plaintiffs have not properly sued Kwong and Gregorio, who are not "members" of 800 Cooper Finance, under § 18-804, which does not permit creditors to bring a direct suit against members for improper distribution of LLC funds.

Similarly, Counterclaim Plaintiffs cite *Pepsi-Cola Bottling Co. of Salisbury, Maryland v. Handy*, No. 1973-S, 2000 WL 364199, at *4 (Del. Ch. Mar. 15, 2000), to argue that Del. Code. Ann. tit. 6 § 18-303(a) does not insulate Kwong and Gregorio from liability "solely" because they served as managers and members of 800 Cooper Finance and KVest. In that case, the plaintiffs negotiated with individual defendants to purchase a piece of land from the defendants. After the parties negotiated a purchase agreement but before the plaintiffs purchased and obtained title to the property, the defendants transferred ownership of the land from individuals

16

to an LLC. *Id.* When the plaintiffs later sued the individual defendants for fraudulent inducement, the defendants sought protection under Del. Code tit. 6 § 18-303. *Id.* Because the defendants committed the alleged fraud before they formed the LLC, the court found that the defendants were not immune from liability "solely" because they eventually formed and became members of an LLC. *Id.* at *5.

*Pepsi-Cola* is inapposite. Unlike the plaintiffs in *Pepsi-Cola*, Counterclaim Plaintiffs have not identified any misconduct committed by Kwong or Gregorio separate and apart from their respective roles as officers and members of 800 Cooper Finance and KVest. Counterclaims IV and V also do not allege common-law tort or contract claims against Kwong and Gregorio, but rather allege statutory violations of § 18-804 based on their conduct as LLC members. Because they seek to recover under § 18-804, Counterclaim Plaintiffs are bound to §18-804's statutory requirements.

**IV.   Conclusion**

For the reasons set forth above, the Court will grant Counterclaim Defendants' motion for partial summary judgment on Counterclaims IV and V. An appropriate order will follow.


March 22, 2022                                                                    /s/ Joseph H. Rodriguez, USDJ
                                                                                        Hon. Joseph H. Rodriguez, USDJ