# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| 800 COOPER FINANCE, LLC, | Civil Action No. 16-736 (JHR/JS) |
| Plaintiff, | |
| v. | |
| SHU-LIN LIU, et al., | |
| Defendants. | |
| | |
| KL HOLDINGS, INC., SHU-LIN LIU AND JOLIN CHIAOLIN TSAO, | Civil Action No. 17-456 (JHR/JS) |
| Plaintiffs, | **OPINION** |
| v. | |
| 800 COOPER FINANCE, LLC, JIMMY KWONG, KATHARINA M. GREGORIO, and John Does 1-5, | |
| Defendants. | |

This matter is before the Court on the motion to dismiss for lack of subject-matter jurisdiction and, alternatively, for summary judgment and the appointment of a special master. [17-456 Dkt. 67] [1] filed by Counterclaim Defendant 800 Cooper Finance, LLC ("800 Cooper"). For the reasons set forth below, the Court will deny this motion.

---

[1] The motion before the Court was filed in connection with the 17-456 matter. Docketing in these companion cases has created some inconsistency and confusion, with some filings appearing on one docket but not the other. Thus, the Court will refer to the case number and docket entry for each record citation.

1

## I. Introduction

The Court has recited the facts relevant to this motion previously [*see* 16-736 Dkt. 161], and largely repeats those facts here for convenience.

Counterclaim Plaintiffs KL Holdings, Inc. ("KL Holdings"); Shu-Lin Liu; and Jolin Chiaolin Tsao (collectively "Counterclaim Plaintiffs") seek to recover funds that Counterclaim Plaintiffs paid to 800 Cooper to obtain release from a series of loans. Between 2005 and 2011, KL Holdings obtained two business loans and a line of credit for $801,000 in total from PNC Bank (collectively "the Loans").[2] KL Holdings secured the Loans with a parcel of real estate in Camden, New Jersey referred to as the "Bridgeview Property."

In 2015, KL Holdings entered an agreement with Kamgirsons, Inc. ("Kamgirsons") to sell the Bridgeview Property to Kamgirsons. Jimmy Kwong ("Kwong") was a principal for Kamgirsons. After receiving information about the Loans and the Bridgeview Property during negotiations, Kamgirsons cancelled the agreement of sale and withdrew from negotiations. 800 Cooper then purchased the Loans from PNC Bank. [16-736 Dkt. 128-2 ¶ 0].

On February 10, 2016, 800 Cooper filed a complaint in this Court against Counterclaim Plaintiffs seeking "confession of judgment" after KL Holdings allegedly defaulted on the Loans for failing to make timely payments. [*See* 16-736 Dkt. 1]. 800 Cooper required the following payments:

> $100,000 Line of Credit: Principal, $62,819.50; Interest, $7,987.91
> $500,000 Business Loan: Principal, $439,962.96; Interest, $21,830.29
> Legal Fees: $ 982.50
> Appraisal Fees: $ 3,900.00
> $201,000 Business Loan: Principal, $201,000.00; Interest, $9,881.04
> Total Due and Owing through March 1, 2016: $748,364.20

---

[2] The Court will refer to the agreements between KL Holdings and PNC Bank that memorialized the Loans as the "Loan Agreements."

[16-736 Dkt. 72 at 2-3].

Counterclaim Plaintiffs disputed—and continue to dispute—that they defaulted on the Loans and the amount due to 800 Cooper. [*See* 16-736 Dkt. 144 at 5; 16-736 Dkt. 54 ¶¶ 8–13]. But Counterclaim Plaintiffs wanted to sell the Bridgeview Property to a third party and could not do so until 800 Cooper released its security interest in the Bridgeview Property. Counterclaim Plaintiffs allege that 800 Cooper used the security interest to hold Counterclaim Plaintiffs hostage and refused to release its interest until Counterclaim Plaintiffs met 800 Cooper's "excessive" demands. [Dkt. 144 at 34–35; Dkt. 54 ¶¶ 12, 16–17]. Counterclaim Plaintiffs obtained $200,000 in bridge loans from another lender and paid the amount that 800 Cooper claimed was due on the Loans, even though Counterclaim Plaintiffs believed that the loan payoff amount exceeded the amount owed. [Dkt. 54 ¶¶ 17–18]. The Court will refer to the funds that Counterclaim Plaintiffs paid to obtain the release as the "Loan Payoff Funds." On July 27, 2017 counsel for 800 Cooper voluntarily dismissed the suit against Counterclaim Plaintiffs. [16-736 Dkt. 41].

After Counterclaim Plaintiffs obtained the release, they moved to amend their answer to 800 Cooper's complaint against them to assert counterclaims against 800 Cooper. [*See* 16-736 Dkt. 42]. Judge Schneider granted the motion, and Counterclaim Plaintiffs asserted counterclaims against 800 Cooper alone for breach of contract, conversion, and unjust enrichment (Counterclaims I–III, respectively). Counterclaim Plaintiffs also filed counterclaims against 800 Cooper, Kwong, and Gregorio for "improper cancellation of 800 Cooper, LLC" and improper distribution of LLC assets (Counterclaims IV–V, respectively). [*See* 16-736 Dkt. 54].

Counterclaims I–III assert that 800 Cooper's "payoff demand included the following amounts which were and are not due and owing:"

3

   a. Late charges of $4,825.47 (not recoverable after acceleration of the loan);
   b. Annual Fees of $1,225.00 (not recoverable after acceleration of the loan);
   c. Appraisal Fee of $3,900 (no evidence of appraisal or payment of fee provided);[3]
   d. PNC Legal Fees of $982.50 (no documentation for fee provided);
   e. Collection Costs of $46,244.24 (no judicial determination of whether legal fees and costs are reasonable and whether they are warranted in this case, in which [800 Cooper] accelerated loan and filed action without proper notice, did not obtain judicial determination in its favor, filed erroneous complaint and confession of judgment, and charged amounts far in excess of what is reasonable under the circumstances, and refused to provide documentation supporting collection costs assessed);
   f. Processing Fee of $1,800 (no basis for assessment under loan documents);
   g. Failure to credit principal reduction payment of $1,182.14;
   h. Default interest improperly assessed of $22,951.02 (default interest not recoverable because loans extended and Plaintiff acted in bad faith, and because default rate of interest constitutes an unenforceable penalty unrelated to actual expenses incurred by lender);
   i. Interest Costs incurred for bridge loan in excess of $16,000; and
   j. Legal Fees to secure release of Mortgage in excess of $1,500.

[16-736 Dkt. 54, Counterclaim ¶¶ 22, 28]. The counterclaims seek to recover these allegedly improper fees, which exceed $100,000 in total. Counterclaim Plaintiffs asserted subject-matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332 in part because the damages alleged exceed $75,000. [16-736 Dkt. 54, Counterclaim ¶ 6]. Counterclaim Plaintiffs also asserted that the Court had supplemental jurisdiction over the counterclaims under 28 U.S.C. § 1367 because the counterclaims "are related to and arise out of" the claims asserted by 800 Cooper against Counterclaim Plaintiffs. [*Id.*].

800 Cooper moved to dismiss the counterclaims alleging, among other things, that the Court lacked subject-matter jurisdiction over the Counterclaims. [*See* 16-736 Dkt. 59-1]. 800 Cooper argued that the Loan Agreements permitted 800 Cooper to charge Counterclaim Plaintiffs for the "collection costs" and other fees which Counterclaim Plaintiffs allege to be

---

[3] In their opposition brief, Counterclaim Plaintiffs assert that they no longer seek damages for this appraisal fee. [17-456 Dkt. 78 at 22].

improper, and that there was no basis in the Loan Agreements for Counterclaim Plaintiffs to recover bridge loan interest. 800 Cooper concluded that that Counterclaim Plaintiffs lacked a basis in the Loan Agreements or otherwise to establish more than $75,000 in damages as 28 U.S.C. § 1332(a) requires. [16-736 Dkt. 59-1 at 7-10]. The Court denied this motion after finding that the counterclaims asserted more than $75,000 in damages in good faith. [*See* Dkt. 16-736 Dkt. 72 at 11-13]. The Court also found supplemental jurisdiction over the counterclaims under § 1367. [*Id.* at 14].

More than three years later after its initial motion to dismiss, 800 Cooper filed the present motion to dismiss for lack of subject-matter jurisdiction. [17-456 Dkt. 67]. 800 Cooper again contends that Counterclaim Plaintiffs "exaggerate" 800 Cooper's potential liability, cannot recover more than $75,000 in damages and, therefore, cannot satisfy § 1332(a)'s $75,000 amount-in-controversy requirement. [*Id.*]. 800 Cooper also argues that, if the Court finds that it has subject-matter jurisdiction, it should convert this motion into a motion for summary judgment with respect to "the calculation of permissible collection costs at payoff," "the determination of the portion of the bridge loan interest that may be asserted as damages," and "the determination that the appraisal fee was permissible." [17-456 Dkt. 67-1 at 22-23]. 800 Cooper also asks the Court to appoint a special master to calculate the amount of interest that Counterclaim Plaintiffs can recover.

## II. Standard of Review

Parties moving to dismiss under Federal Rule of Civil Procedure 12(b)(1) may raise a facial or factual challenge to subject-matter jurisdiction. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). A facial attack asserts that the factual allegations in a complaint are "insufficient to invoke the subject matter jurisdiction of the court." *Const. Party of Pa. v.*

*Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). A factual challenge attacks the factual basis for a plaintiff's claim to federal jurisdiction. *See CNA v. United States*, 535 F.3d 132, 145–46 (3d Cir. 2008), *as amended* (Sept. 29, 2008). A factual challenge can consider information beyond the pleadings, and no "a presumptive truthfulness attaches to plaintiff's allegations." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *see also Martinez v. U.S. Post Office*, 875 F. Supp. 1067, 1070 (D.N.J. 1995).

### III. Analysis

800 Cooper argues that the Court lacks subject-matter jurisdiction over the counterclaims asserted against 800 Cooper because Counterclaim Plaintiffs cannot satisfy the $75,000 amount-in-controversy requirement necessary for diversity jurisdiction under 28 U.S.C. § 1332. [17-456 Dkt. 67-1 at 15]. 800 Cooper also argues that, if the Court finds that it has subject-matter jurisdiction over the counterclaims, the Court should grant partial summary judgment in 800 Cooper's favor and appoint a special master to calculate loan interest amounts. [17-456 Dkt. 67-1 at 3]. The Court will address each of these arguments in turn.

#### a. Amount in Controversy

For a court to exercise diversity jurisdiction, there must be a controversy between citizens of different states, and the amount in controversy must exceed $75,000. *See* 28 U.S.C. § 1332(a)(1). Generally, courts "discern the amount in controversy by consulting the face of the complaint and accepting the plaintiff's good faith allegations." *Dolin v. Asian Am. Accessories, Inc.*, 449 F. App'x 216, 218 (3d Cir. 2011). Where factual disputes underly an amount-in-controversy determination, courts must resolve those "disputes under the preponderance of the evidence standard, with the burden resting on the party alleging jurisdiction." *Schober v. Schober*, 761 F. App'x 127, 129 (3d Cir. 2019). But where fact issues underlying "the

jurisdictional issue cannot be decided without the ruling constituting at the same time a ruling on the merits, [courts must] permit the cause to proceed to trial." *Nelson v. Keefer*, 451 F.2d 289, 292 (3d Cir. 1971) (quoting *Wade v. Rogala*, 270 F.2d 280, 285 (3rd Cir. 1959)).

"After the court makes findings of fact, it must apply the 'legal certainty' test for jurisdiction." *Schober*, 761 F. App'x at 129 (citing *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 398 (3d Cir. 2004)). Under this test, courts may dismiss a case where it appears to a "legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). "Such dismissal may be appropriate where the facts indicate that a plaintiff claimed certain damages merely to obtain federal court jurisdiction, or where the court determines that no reasonable jury could award that amount." *Schober*, 761 F. App'x at 129 (citations omitted).

As it did three years ago, 800 Cooper contends that Counterclaim Plaintiffs cannot recover more than $75,000 in damages in this lawsuit. [17-456 Dkt. 67-1 at 15]. 800 Cooper argues that the damages which Counterclaim Plaintiffs allege "were legally and contractually permissible fees and costs paid by Counterclaim Plaintiffs during the subject loan payoff." [17-456 Dkt. 67-1 at 15]. 800 Cooper asks the Court to interpret the Loan Agreements and confirm that the Loan Agreements permitted 800 Cooper to charge the fees that Counterclaim Plaintiffs allege to be excessive and which provide the basis for Counterclaim Plaintiffs' damages calculation.[4] 800 Cooper also argues that Counterclaim Plaintiffs lacked a good-faith basis to seek "damages for bridge loan interest, collection costs, and an appraisal fee." [*Id.*].

---

[4] [*E.g.* 17-456 Dkt. 67-1 at 18 ("Counterclaim Plaintiffs allege in their statement of damages there has been no judicial determination as to whether legal fees and costs were reasonable and whether were warranted as part of the loan payoff. But the various loan agreements, notes, and Confessions of Judgment executed and agreed to by Counterclaim Plaintiffs clearly and

7

Counterclaim Plaintiffs respond that 800 Cooper improperly seeks to relitigate 800 Cooper's initial motion to dismiss, which was filed more than three years ago and rejected nearly three years ago. [17-456 Dkt. 78 at 9-10]. Counterclaim Plaintiffs observe that the Court previously found that it was not a "legal certainty" that their counterclaims would fall short of the $75,000 amount-in-controversy threshold, and contend that the law of the case doctrine precludes 800 Cooper from arguing otherwise now. [17-456 Dkt. 78 at 6-7]. Counterclaim Plaintiffs also argue that their damages claims still meet the "legal certainty" standard described above. [17-456 Dkt. 78 at 10].

"The law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation." *Pub. Int. Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997). However, "courts may reconsider issues that impinge on their jurisdictional powers … when extraordinary circumstances warrant such reconsideration." *Id.* at 118. Extraordinary circumstances "include situations in which: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Id.* at 117 (citing *Bridge v. U.S. Parole Commission*, 981 F.2d 97, 103 (3d Cir. 1992)).

The Court agrees that the law-of-the-case doctrine defeats 800 Cooper's motion. In the Court's view, the arguments in the present motion to dismiss are variations on the arguments which the Court considered and rejected nearly three years ago. For example, 800 Cooper argued previously that Counterclaim Plaintiffs could not recover the $16,000 bridge loan interest because "[n]othing in the [Loan Agreements] or otherwise would suggest any liability by 800

---

consistently provide Counterclaim Defendant power to assess far more than the $46,244.24 in collection costs and deem such costs as reasonable costs in pursing the loan payoff.")].

Cooper for [Counterclaim Plaintiffs'] costs to satisfy the validly existing debt." [16-736 Dkt. 59-1 at 8]. Now, 800 Cooper argues that Counterclaim Plaintiffs cannot recover all of the bridge loan interest because $736,864.08 of the $819,974.45 that Counterclaim Plaintiffs paid to secure the release from the Loans was the loan principal, which Counterclaim Plaintiffs "indisputably owed." [17-456 Dkt. 67-1 at 16]. 800 Cooper contends that it cannot be liable for interest on all $200,000 of the bridge loans when the difference between the loan principal and the payoff amount—a difference comprised of the allegedly excessive fees—is only $83,110.37. [17-456 Dkt. 67-1 at 16]. This argument, like the other arguments raised in 800 Cooper's present motion, does not rely on new evidence, a change in law, or clear error in the Court's prior decision. As such, 800 Cooper's motion does not present "extraordinary circumstances" that require the Court to reconsider jurisdictional "issues that were resolved earlier in the litigation." *Pub. Int. Rsch. Grp. of N.J.*, 123 F.3d at 116.

Even if the law-of-the-case doctrine was not dispositive, 800 Cooper's motion would still fail. At bottom, 800 Cooper's motion asks the Court to address the merits of 800 Cooper's defenses to liability, find that 800 Cooper's defenses prevail, and conclude that Counterclaim Plaintiffs cannot satisfy § 1332's amount-in-controversy requirement. But "[t]he test for whether a case satisfies the amount in controversy requirement is whether the complaint makes a good-faith claim for the amount, not whether the plaintiff is actually entitled to such an amount." *Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1121 (7th Cir. 1998) (citations omitted). For this reason, "defenses asserted on the merits may not be used to whittle down the amount in controversy." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (citations and quotations omitted). *Accord Smithers v. Smith*, 204 U.S. 632, 642 (1907) ("The rule that the plaintiff's allegations of value govern in determining the jurisdiction, except

9

where, upon the face of his own pleadings, it is not legally possible for him to recover the jurisdictional amount, controls even where … a perfect defense might be interposed to a sufficient amount of the claim to reduce it below the jurisdictional amount."); *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982) (finding that the district court erred in dismissing a case for failure to satisfy the amount-in-controversy requirement after determining that a statute limited damages to $1,000 because the district court "contravene[d] the rule that the existence of a valid defense does not deprive a federal court of jurisdiction" (citations omitted))); *Nelson*, 451 F.2d at 292 (noting that the "necessary choice … where the jurisdictional issue cannot be decided without the ruling constituting at the same time a ruling on the merits, is to permit the cause to proceed to trial." (quoting *Wade*, 270 F.2d at 285)); *Associated Bus. Tel. Sys. Corp. v. Danihels*, 829 F. Supp. 707, 710 (D.N.J. 1993) (finding that it was "premature" to consider merits defenses that might reduce damages below the statutory threshold). Addressing 800 Cooper's amount-in-controversy argumenst would require the Court to interpret the Loan Agreements and rule on the merits of 800 Cooper's defenses. While 800 Cooper may raise its contract interpretation arguments in a motion for summary judgment, the Court finds that it would be improper to address them in the context of a challenge to subject-matter jurisdiction.

800 Cooper also argues that "damages for bridge loan interest, collection costs, and an appraisal fee" should not count towards the amount-in-controversy calculation because Counterclaim Defendants seek these damages in bad faith.[5] [17-456 Dkt. 67-1 at 15]. 800 Cooper contends that Counterclaim Plaintiffs sought these costs and fees to "artificially inflate

---

[5] The test for good or bad faith is the "legal certainty" test articulated above. *See Nelson*, 451 F.2d at 292–93 ("[T]he basic criterion for determining 'good faith' is that must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." (quoting *St. Paul Mercury Indemnity*, 303 U.S. at 288-89)).

[their] alleged damages in order to meet the amount in controversy requirement." [17-456 Dkt. 67-1 at 15]. As noted above, Counterclaim Plaintiffs assert that they no longer seek damages for this appraisal fee. [17-456 Dkt. 78 at 22]. Otherwise, 800 Cooper's argument is conclusory and lacks factual and legal support. This argument is also dubious because Counterclaim Plaintiffs asserted supplemental federal jurisdiction over their counterclaims under 28 U.S.C. § 1367 independent of their claim to diversity jurisdiction under § 1332. [16-736 Dkt. 67 at 10 ¶ 4].

Moreover, this bad faith argument is another way of asking the Court to consider the merits of 800 Cooper's defenses, which the Court declines to do for the reasons stated above. *See Red Cab*, 303 U.S. at 289 ("The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction."); *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999) ("[A] valid defense offered by the defendant, or actual recovery in an amount less than the minimum jurisdictional amount—'do [ ] not show [plaintiff's] bad faith or oust the jurisdiction.'" (quoting *Red Cab*, 303 U.S. at 289)); *Great N. Ins. Co. v. ADT Sec. Servs., Inc.*, 517 F. Supp. 2d 723, 754 (W.D. Pa. 2007).

In sum, the Court declines to find that it lacks subject-matter jurisdiction over this case and will deny 800 Cooper's motion to dismiss for lack of jurisdiction.

### b. Motion for Summary Judgment, Special Master

800 Cooper argues that, if the Court declines to grant its motion to dismiss for lack of subject-matter jurisdiction, the Court should construe its motion as a motion for partial summary judgment with respect to "the calculation of permissible collection costs at payoff," "the determination of the portion of the bridge loan interest that may be asserted as damages," and "the determination that the appraisal fee was permissible." [17-456 Dkt. 67-1 at 22-23]. 800

11

Cooper also asks the Court to appoint a special master to "determine the proper amount of interest that was to be assessed at loan payoff." [17-456 Dkt. 67-1 at 23].

The Court declines to treat this motion as a motion for summary judgment. As Counterclaim Plaintiffs point out, 800 Cooper has not submitted a statement of material undisputed facts as the local rules require for summary judgment motions. *See* L. Civ. R. 56.1(a) ("On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion. A motion for summary judgment unaccompanied by a statement of material facts not in dispute shall be dismissed."). The Court declines to convert the motion because 800 Cooper did not comply with local rules.

The Court also declines to appoint a special master to evaluate interest at this juncture. The Court agrees with Counterclaim Plaintiffs that 800 Cooper provide no factual or legal support for this request. [17-456 Dkt. 78 at 22].

**IV. Conclusion**

For the reasons stated above, the Court will deny 800 Cooper's motion to dismiss, its request to treat the motion to dismiss as a motion for summary judgment, and its request to appoint a special master to calculate interest. An appropriate order will follow.

August 16, 2022                                    /s/ Joseph H. Rodriguez, USDJ