IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| 800 COOPER FINANCE, LLC, | Civil Action No. 16-736 (JHR/SAK) |
| Plaintiff, | |
| v. | |
| SHU-LIN LIU, et al., | |
| Defendants. | |
| | |
| KL HOLDINGS, INC., SHU-LIN LIU AND JOLIN CHIAOLIN TSAO, | Civil Action No. 17-456 (JHR/SAK) |
| Plaintiffs, | |
| | **OPINION** |
| v. | |
| 800 COOPER FINANCE, LLC, JIMMY KWONG, KATHARINA M. GREGORIO, and John Does 1-5, | |
| Defendants. | |

Counterclaim Plaintiffs KL Holdings, Inc., Shu-Lin Liu, and Jolin Chiaolin Tsao ("Counterclaim Plaintiffs") move for sanctions and civil contempt [Dkt. 177] based on the failure of Counterclaim Defendant 800 Cooper Finance, LLC ("800 Cooper") and former Counterclaim Defendants Jimmy Kwong ("Kwong"); and Katharina M. Gregorio ("Gregorio") (collectively "Counterclaim Defendants") to comply with Judge King's November 10, 2021 discovery order [Dkt. 148] and this Court's March 1, 2022 order

1

[Dkt. 159] (collectively "the Orders") upholding Judge King's order.[1] For the reasons set forth below, the Court will grant this motion.

## I. Background

The Court has recited much of the relevant factual background in a prior opinion, [*see* Dkt. 164-65], and largely repeats that background here. On September 3, 2021, Judge King ordered Counterclaim Defendants to produce the operating agreement (the "Operating Agreement") of KVest Camden, LLC ("KVest") (the "September 3 Order"). [Dkt. 135]. KVest was the sole member of Defendant 800 Cooper Finance, LLC ("800 Cooper"), which Counterclaim Plaintiffs believe to be implicated in the alleged unlawful conduct committed by Counterclaim Defendants. [Dkt. 135 at 2]. In ordering Counterclaim Defendants to produce the Operating Agreement, Judge King found:

> The Operating Agreement for Kvest—admittedly, the sole member of 800 Cooper Finance—is therefore relevant to Counterclaim Plaintiffs' conversion claims. The operating agreement may shed light on the relationship between 800 Cooper Finance, Kvest and other persons/entities knowledgeable about and/or involved in the alleged improper conduct, and who may have improperly received distributions from 800 Cooper Finance.

[*Id.*]. There is no doubt that Judge King intended this production to include the names and addresses of KVest's members because she denied a separate discovery request for "documents evidencing the names and addresses of members of Kvest Camden" as "moot and unnecessarily cumulative. The Court ordered the production of Kvests's Operating Agreement, which should contain the information sought." [*Id.* at 3].

---

[1] Although Counterclaim Plaintiffs filed this motion in connection with the 17-456 matter, the motion was docketed in the related 16-736 matter. Thus, record citations refer to docket entries in the 16-736 matter.

Counterclaim Defendants produced the ordered documents, but with significant redactions, including the redacted last names, addresses, and tax identifiers of KVest's members. [Dkt. 152 at 9]. Counterclaim Defendants then filed a motion for reconsideration, asking Judge King to permit them to permanently withhold this redacted information. [Dkt. 138-1 at 6–7]. On November 10, 2021, Judge King granted the motion for reconsideration in part and denied the motion in part (the "November 10 Order"). [*See* Dkt. 146]. Judge King permitted Counterclaim Defendants to redact the social security numbers of KVest's members. [*Id.* at 4–5]. But Judge King otherwise denied Counterclaim Defendants' motion for reconsideration after finding that it repeated "the same facts and arguments" that she rejected or accommodated in issuing the September 3 order. [*Id.* at 5]. Judge King ordered that "Counterclaim Defendants shall produce the full names and addresses of Kvest members contained in the limited documents Ordered in the Court's September 3, 2021 Opinion and Order [ECF No. 135] within five (5) days of this Order." [*Id.*].

November 15, 2021 came and went, but Counterclaim Defendants did not produce information as the November 10 Order required. On November 23, 2021, Counterclaim Defendants appealed the November 10 Order. [Dkt. 148]. This appeal was timely because it was filed within fourteen days of the November 10 Order. *See* L. Civ. R. 72(c)(1)(A). However, Counterclaim Defendants did not ask Judge King to stay her November 10 Order when filing this appeal. *See* L. Civ. R. 72(c)(1)(B). The next day, Counterclaim Plaintiffs filed a motion for sanctions under Federal Rule of Civil Procedure 37 for Counterclaim Defendants' failure to comply with the November 10 Order. [Dkt. 149].

Since then, there has been substantive motion practice and the Court has decided three motions that touch on Judge King's November 10 Order. First, on March 1, 2022, the Court considered and denied Counterclaim Defendants' appeal of the November 10 Order (the "March 1 Order"). [Dkt. 159]. Counterclaim Defendants argued, among other things, that Judge King clearly erred in ordering Counterclaim Defendants to produce KVest member information because Counterclaim Plaintiffs had not alleged any claims against the members. Counterclaim Defendants further argued that the claims alleged against Counterclaim Defendants cannot result in liability against the KVest members under Delaware LLC law. [Dkt. 138-1 at 7–8]. The Court rejected these arguments, finding that they did "not address Judge King's core finding that KVest's members may be 'knowledgeable' about the conduct at issue in this case" and, therefore, that the members may have relevant information concerning this conduct. [Dkt. 159 at 2].[2] Thus, while the Court took no position on whether the KVest members could be liable under Delaware law based on the claims pending against Counterclaim Defendants, the Court found no error in Judge King's conclusion that the members may have relevant information about these claims. [*See id.*]. The Court ordered Counterclaim Defendants to produce the outstanding information, including the unredacted operating agreement, by March 7, 2022. [Dkt. 159].

At this juncture, there is no dispute that 800 Cooper, Kwong, and Gregorio remained in the case, and therefore, were obliged to comply with the Orders. They did not. Three weeks later, on March 22, 2022, the Court granted Counterclaim Defendants' motion for partial summary judgment. [Dkt. 161, 162]. The Court ruled that

---

[2] The Court rejected Counterclaim Defendants' other arguments on procedural grounds, finding that Counterclaim Defendants repeated the same facts and arguments which Judge King twice denied. [Id.].

4

Counterclaim Plaintiffs could not sustain certain claims against Defendants Kwong and Gregorio as a matter of Delaware law. [*See* Dkt. 162]. This Order dismissed Kwong and Gregorio as individual defendants. Significantly, when explaining the procedural history for that motion, the Opinion included language indicating the Court's assumption that Counterclaim Defendants had complied with the March 1 Order and produced the outstanding discovery items because the Court had not received any notification that Counterclaim Defendants failed, refused to comply, or sought a stay. [*See* Dkt. 164-65].

Then, on March 30, 2022, the Court denied Counterclaim Plaintiffs' motion seeking Rule 37 sanctions for Counterclaim Defendants' failure to comply with Judge King's November 10 Order. [*See* Dkt. 162]. The Court found that Counterclaim Defendants' decision to seek reconsideration of the November 10 Order and to appeal Judge King's denial of that reconsideration was grounded in a colorable argument and, therefore, did not warrant sanctions at that time, even though Counterclaim Defendants never sought a stay of the discovery Order pending appeal. [*See* Dkt. 164]. 800 Cooper filed a motion challenging the Court's jurisdiction over the remaining claims on May 4, 2022. [Dkt. 171].

Unbeknownst to the Court, the Counterclaim Defendants never produced the KVest member names at all let alone within six days of this Court's March 1 Order. The Court first learned of the failure to disclose on June 10, 2022, when Counterclaim Plaintiffs filed the present motion seeking contempt and sanctions for 800 Cooper's refusal or failure to produce these discovery materials. [Dkt. 177]. The present motion seeks to hold 800 Cooper in contempt, the immediate production of the KVest member

names, and an award of attorneys' fees and costs associated with litigating the motion, among other items.

800 Cooper filed an opposition brief to the contempt motion on June 24, 2022 and argues, *inter alia,* that the March 23, 2022 Order and March 22, 2022 Opinion, dismissing Kwong and Gregorio, superseded, nullified and vacated all prior orders compelling 800 Cooper to produce the last names and addresses of former KVest members, that this information is no longer relevant, and that 800 Cooper is a dissolved entity and is not the entity in possession and control of the requested information and does not have the unilateral ability to provide the requested information. 800 Cooper further argues that the discovery is completely irrelevant at this stage of the litigation.

800 Cooper's jurisdiction motion was denied on August 22, 2022. Then, a hearing was set on the contempt motion and oral argument was held on October 26, 2022. The record of that proceeding is incorporated herein. During argument, Counterclaim Defendant repeated its claims of compliance and averred that a letter was sent to Kwong immediately following the Court's March 1, 2022 Order directing the production of the Kvest member names. 800 Cooper further explained that it did not have access to the unredacted KVest operating agreement and, therefore, could not comply with the discovery order without the cooperation of Kwong and Gregorio, who were no longer in the case by the end of March 2022.

The Court expressed its concern that the Orders were not followed given that the compliance date of March 7, 2022 fell withing a period of time when all of the Counterclaim Defendants remained in the case. Even though Kwong and Gregorio had a pending motion that called their individual liability into question, the Court's March 1 Order directing production did not carve out a stay pending a ruling on pending or

prospective motions. The Order contemplated compliance withing a short period of time. Given that the production of the discovery did not happen, between the compliance date of March 7 until March 22, when dismissal was granted, the Court explained that all of the Counterclaim Defendants appeared to be in contempt.

After a lengthy discussion, the Court directed 800 Cooper to produce authority supporting its arguments that Kwong's and Gregorio's dismissal from the case relieved them and 800 Cooper from complying with the March 1, 2022 Order. The Court also sought clarification as to why 800 Cooper was not in contempt of the Orders given that Judge King's Order specifically noted the relevance of the operating agreement to the conversion counterclaim. A briefing schedule was set.

Curiously, five business days after the hearing, on November 1, 2022, the Court received an unredacted version of the KVest operating agreement in Chambers. On its own accord, 800 Cooper provided the agreement to the Court only and asked for "in-camera" review with a request that the Court fashion a confidentiality agreement before disclosing the same to KL Holdings. The same day, Counterclaim Defendant provided the supplemental briefing and a week later, KL Holdings filed a response. To date, KL Holdings has not been provided a copy of the unredacted version of the operating agreement.[3]

---

[3] None of the Orders directing Counterclaim Defendants to produce the operating agreement considered "in-camera" review and/or provided for the Court's involvement in fashioning a confidentiality agreement. During the hearing in this matter, counsel for Counterclaim Defendant stated that he attempted to obtain the unredacted operating agreement by way of letter dated March 1, 2022. In its supplemental brief, 800 Cooper also claims another attempt was made after the denial of its jurisdiction motion. The Court does not question these attempts, but finds it curious that after it signaled the likelihood of a finding of contempt, an unredacted version of the operating agreement was delivered to Chambers within four to five days.

## II. Analysis

Counterclaim Plaintiffs seek a finding of contempt and sanctions. "Violation of a court order constitutes contempt where: 1) a valid court order exists; 2) the defendant had knowledge of the order; and 3) the defendant disobeyed the order." *C/F Int'l, Inc. v. Classic World Prods.*, No. CIV.A. 01-3624 (WJM), 2006 WL 355331, at *2 (D.N.J. Feb. 16, 2006) (citing *Harris v. City of Philadelphia*, 47 F.3d 1311, 1326 (3d Cir. 1995)).

The Court finds that the three elements of contempt are met and rejects 800 Cooper's argument that the Counterclaim Defendants did not "disobey" any court order as plainly inaccurate. In upholding Judge King's finding that the outstanding discovery information was relevant to the claims at issue in this case, this Court's March 1 Order required Counterclaim Defendants to produce the names of the KVest shareholders by March 7. [Dkt. 159]. There is no dispute that Counterclaim Defendants did not produce this information by March 7 as instructed. There is no dispute that Counterclaim Defendants knew of their obligation to comply with the March 1 Order. In fact, during the hearing counsel averred that the Court's March 1 Order caused a letter seeking this information to be sent to KVest upon receipt of this Court's order affirming Judge King's discovery order. [Cert. ¶ 14, Dkt. 182-1].[4]

Still, a finding of contempt and the imposition of sanctions requires the Court to consider the circumstances of the case and the alleged contemnors' attempts at compliance. "Civil contempt is designed to force the contemnor to comply with an order

---

[4] Counsel represented Kwong, Gregorio and 800 Cooper at this time. The letter counsel references is sent on behalf of all three counterclaim defendants to "KVest Camden, LLC." Although Kwong and Gregorio are members of KVest at this time, the letter is directed to "Sir or Madam." There is no evidence that KVest responded to counsel or that counsel employed any follow-up attempts. The fact that counsel did not receive a response coupled with the fact that he represented two members of KVest renders counsel's attempt at compliance feeble.

8

of the court." *Willy v. Coastal Corp.*, 503 U.S. 131, 139, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992). "A finding of contempt must be supported by clear and convincing evidence, therefore, it should not be granted if there is doubt surrounding the wrongfulness of the party's conduct. *Raza v. Biase*, No. 2:07-CV-02576 (DMC); 2008 WL 11495053, at *2 (D.N.J. Mar. 17, 2008)(citations omitted). An alleged contemnor is given the benefit of any ambiguity but is tasked with demonstrating substantial compliance by taking all 'reasonable steps' to comply with the order. *See id.* (quoting *Harris*, 47 F.3d at 1326).

The Court has considered the circumstances of this case. Here, at the time of the Court's March 1 Order directing production of the discovery, there was an outstanding motion pending which called the liability of Kwong and Gregorio into question, but not that of 800 Cooper. Counterclaim Defendants' argument that they acted in good faith given the pendency of the individual liability motion misses the mark as does counsel's proof of attempted compliance by way of letters seeking the unredacted operating agreement sent following the March 1 Order and the August Order denying 800 Cooper's jurisdiction motion. Good faith alone is not a sufficient defense. *Raza*, No. 2:07-CV-02576 (DMC); 2008 WL 11495053, at *2 (citing *Harris*, 47 F.3d at 1326).

800 Cooper's argument that the Court's decision to grant summary judgment in favor of Kwong and Gregorio relieved them "of any obligation to supply the information at issue when the Court ruled that Counterclaim Plaintiffs had no right to assert claims for recoupment of distributions against former KVest members—the purported basis for the disputed discovery" is off base. [Dkt. 182 at 11]. The "purported basis for the disputed discovery" is not—and never was—Counterclaim Plaintiffs' putative claims against KVest members. Rather, Judge King found—and this Court affirmed—that the KVest member information is relevant because those individuals may be

"knowledgeable about and/or involved in the alleged improper conduct" alleged against Counterclaim Defendants in the conversion claim, pled in Count II. [Dkt. 135, 46]. The Court repeated this finding in its opinion denying an earlier motion for sanctions against Counterclaim Defendants. [Dkt. 164-65]. In that same opinion, the Court also confirmed that its summary judgment opinion did not disturb this core finding about the relevance of the KVest member information. At bottom, Judge King and this Court have rejected Counterclaim Defendants' position concerning the relevance of the KVest member names so many times that the Court struggles to see how Counterclaim Defendants can purport to raise this argument again in good faith.[5]

The Court will not countenance the disobedience of its Orders in this case. Nothing in the record gave the Counterclaim Defendants the option to wait for a favorable ruling as a condition precedent for compliance or called into question the relevancy of the outstanding discovery. Kwong, Gregorio, and 800 Cooper were ordered to produce the discovery by March 7, 2022. They failed to do so.[6] 800 Cooper's failure continued until at least November 1, 2022 when it caused the unredacted operating agreement to be delivered to Chambers.[7] 800 Cooper's argument that the dispositive

---

[5] While the Court's summary judgment order did not alter the relevance of the outstanding discovery, it did complicate matters by dismissing the claims pending against Kwong and Gregorio individually. In their opposition brief here, Counterclaim Defendants have not identified any language in the Court's summary judgment opinion to suggest otherwise.

[6] 800 Cooper's claim that the dismissal of Kwong and Gregorio left them without any means to obtain the discovery is disingenuous. The discovery production obligation was finalized during the period when all Counterclaim Defendant's remained in the case and were all represented by the same counsel. This fact also undercuts 800 Cooper's argument that it is dissolved and does not possess the KVest forms at issue, even though Kwong and Gregorio are members of KVest, the sole member of 800 Cooper. [Dkt. 182 at 13].

[7] Although 800 Cooper certifies that it took steps to obtain the unredacted operating agreement at various junctures, the Court cannot credit those efforts as indicia of substantial compliance. The operating agreement was ordered to be produced on September 3, 2022. Using available Court processes, Counterclaim Defendant produced a redacted version within the timeframe contemplated by that order and then moved for an order justifying the redactions. Reconsideration was swiftly granted but a more fulsome version of the operating agreement was ordered. The fact that an unredacted operating agreement was out of reach or unattainable, given that someone provided a redacted version to counsel, is concerning.

motions, including its pending motion challenging subject matter jurisdiction, filed over two months after the March 1 Order, and the instant motion for contempt, superceded the discovery order is not persuasive. While these arguments may soften the appearance of blatant disregard and delay, willfulness is not a necessary element for a finding of contempt. *See id. (citing Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d. Cir. 1994)).[8] The Court finds 800 Cooper, Kwong and Gregorio in contempt and will award appropriate sanctions related to Counterclaims Plaintiffs' Motion for Contempt.[9]

Finally, the Court notes that Counterclaim Plaintiffs do not ground their request for sanctions and contempt in a particular rule under the Federal Rules of Civil Procedure. Under the Federal Rules, the Court may exercise its inherent powers and impose sanctions, including attorneys' fees, caused by unjustified failure to comply with discovery orders or pretrial orders. *See* Fed.R.Civ.P. 16(f), 37(a)(4), 37(b), 37(d)

---

To be clear, the Court has already determined that series of motions for reconsideration and appeal were taken in good faith and were not sanctionable under Rule 37 as an abuse of process. However, once the appeal was denied and production was ordered within five days, Counterclaim Defendant should have been ready to comply as directed.

[8] There is authority for the proposition that the dismissal of claims that are no longer to be tried makes the relevant discovery issues moot. *Mack Auto Imports, Inc. v. Jaguar Cars, Inc.*, 244 N.J. Super. 254, 257 (App. Div. 1990); *Oddo v. Saibin*, 106 N.J. Eq. 453, 464 (Ch. 1930) (An alleged "contemnor of an order of the court may show, in defense, that the court was without jurisdiction to make the order disobeyed, and hence that there was, in legal effect, no order."); *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76, 108 S. Ct. 2268, 2270 (1988) ("[i]f a district court does not have subject-matter jurisdiction over the underlying action, and the process was not issued in aid of determining that jurisdiction, then the process is void and an order of civil contempt based on refusal to honor it must be reversed."). Here, the challenge to the Court's jurisdiction over the claims against 800 Cooper did not exist at the time of the March 1 Order. Even if it had, like the pending of the summary judgment motion as to Kwong and Gregorio, the Court's Orders and Opinions touching on Judge King's Order to produce the unredacted names and addresses of the Members of KVest always contemplated that the production was to be made immediately and were not abridged by the dispositive motion practice.

[9] "A person who is not a party to a proceeding may be held in contempt if he or she has actual knowledge of a court's order" and disobeys that order or "aids and abets [a person who violates an order] or is legally identified with him." *Roe v. Operation Rescue*, 919 F.2d 857, 871 (3d Cir. 1990) (quoting *Quinter v. Volkswagen of Am.*, 676 F.2d 969, 972 (3d Cir. 1982)("A person who is not a party to a proceeding may be held in contempt if he or she has actual knowledge of a court's order and either abets the defendant or is legally identified with him.")(citation omitted). Kwong and Gregorio were in contempt as parties to the case and can be reached pursuant to *Quinter* as non-parties.

and 37(g). *See also* 28 U.S.C. § 1927. Both Rules 37 and 45 address sanctions and contempt for discovery violations. Rule 37(b)(2)(A), which applies to orders for discovery other than depositions, states that

> [i]f a party or a party's officer, director, or managing agent--
> or a witness designated under Rule 30(b)(6) or 31(a)(4)--
> fails to obey an order to provide or permit discovery,
> including an order under Rule 26(f), 35, or 37(a), the court
> where the action is pending may issue further just orders.
> They may include the following:
> > (i) directing that the matters embraced in the order or
> > other designated facts be taken as established for
> > purposes of the action, as the prevailing party claims;
> > (ii) prohibiting the disobedient party from supporting
> > or opposing designated claims or defenses, or from
> > introducing designated matters in evidence;
> > (iii) striking pleadings in whole or in part;
> > (iv) staying further proceedings until the order is
> obeyed;
> > (v) dismissing the action or proceeding in whole or in
> part;
> > (vi) rendering a default judgment against the
> disobedient   party; or
> > (vii) treating as contempt of court the failure to obey
> > any order except an order to submit to a physical or
> > mental examination.

Fed. R. Civ. P. 37(b)(2)(A). As this language makes clear, "Rule 37(b)(2) on its face applies only to sanctions against parties." *Gen. Ins. Co. of Am. v. E. Consol. Utilities, Inc.*, 126 F.3d 215, 221 (3d Cir. 1997). Kwong and Gregorio are no longer parties to this lawsuit. Thus, the Court cannot award sanctions against Kwong and Gregorio as individuals under Rule 37(b)(2)(A).

However, the imposition of sanctions against 800 Cooper pursuant to Fed. R. Civ. P. 37 (b) and (c) for its failure to disclose discovery as required by Fed. R. Civ. P. 26. Fed. R. Civ. P. 37(c)(1) is permitted. Federal Rule of Civil Procedure 37 authorizes the Court to sanction a party for discovery abuses, including the payment of reasonable

expenses caused by the abuse. *Reckitt Benckiser Inc. v. Tris Pharma, Inc.*, Civ. No. 09-3125, 2011 WL 4962221, at *6 (D.N.J. Oct. 18, 2011). The Court may assess attorney's fees where a "party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45, 111 S. Ct. 2123, 2132–33, 115 L. Ed. 2d 27 (1991).

Here, there is insufficient indicia in the record to justify why the discovery was not produced by March 7, 2022 as Ordered. The arguments advanced by 800 Cooper seek to obfuscate this fact by directing attention to dismissal of Kwong and Gregorio as a superceding event. As explained, *supra.*, the Court's Opinions and Orders touching on Judge King's discovery Order always contemplated and demanded disclosure and bolstered its relevancy. For this reason, it cannot be said that 800 Cooper's non-compliance was substantially justified. [10] To the extent that 800 Cooper's, and by extension Kwong's and Gregorio's non-compliance, caused unnecessary and oppressive delay, the imposition of sanctions in the form of attorney's fees to cover the cost of enforcing compliance are warranted. *Chambers*, 501 U.S. 32, 44–45, 111 S. Ct. 2123, 2132–33.

---

[10] Under Rule 37(a)(5)(A)(ii), a court may not award attorney's fees where the "opposing party's nondisclosure, response or objection was substantially justified." Fed.R.Civ.P. 37(a)(5)(A)(ii). A party's nondisclosure, response or opposition is "substantially justified" if the motion raised an issue "about which reasonable men could genuinely differ on whether a party was bound to comply with a discovery rule." 8 C. Wright & A. Miller, Federal Practice and Procedure 790 (1970); *see also Pierce v. Underwood*, 487 U.S. 552, 553, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (determining that "substantially justified" means "justified to a degree that could satisfy a reasonable person"). In addition, Rule 16(f) provides that the Court may issue "any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney ... fails to appear at a scheduling or other pretrial conference ... or ... fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f); *see also Chiarulli v. Taylor*, No. 08-4400, 2010 WL 1371944, at *2 (D.N.J. Mar. 31, 2010) ("Rules 16 and 37 ... authorize a court to sanction a party that fails to comply with a court order.").

### III. Conclusion

The Court finds that 800 Cooper, Jimmy Kwong and Katharina Gregorio are in contempt of the March 1, 2022, Order of this Court, which affirmed Judge King's Discovery Order and directed disclosure of the documents withing five days- time. As such, the sanction of attorney's fees and costs to cover the filing and prosecution of the motion for contempt are warranted. Moreover, as an alternative basis, Rule 37 provides for sanctions for discovery orders and the Court finds that 800 Cooper violated its obligations with respect to Rule 26 as Ordered by Judge King and affirmed by this Court. Sanctions in the form of attorney's fees and costs to cover the filing and prosecution of the motion for contempt are warranted.

An appropriate Order shall issue.

Dated: December 6, 2022

Hon. Joseph H. Rodriguez, U.S.D.J.