[ECF No. 242]

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| 800 COOPER FINANCE, LLC.,<br><br>    Plaintiff,<br><br> v.<br><br>SHU-LIN LIU et al.,<br><br>    Defendants. | Civil No. 16-736 (JHR/SAK) |
| KL HOLDINGS, INC. et al.,<br><br>    Plaintiffs,<br><br> v.<br><br>800 COOPER FINANCE, LLC et al.,<br><br>    Defendants. | Civil No. 17-456 (JHR/SAK) |

### OPINION AND ORDER

This matter is before the Court on the Motion for Leave to Amend the Complaint/Counterclaim filed by Defendant/Counterclaim Plaintiffs KL Holdings, Inc. ("KL Holdings"), Shu-Lin Liu and Jolin Chiaolin Tsao (collectively, "Counterclaim Plaintiffs") [ECF No. 242].[1] The Court considered Counterclaim Plaintiffs' moving papers [ECF No. 242], Plaintiff/Counterclaim Defendant 800 Cooper Finance, LLC's ("Counterclaim Defendant" or "800 Cooper") opposition [ECF No. 243], and Counterclaim Plaintiffs' reply [ECF No. 245]. The Court

---

[1]This motion was filed in Case No. 16-736. Unless otherwise noted, citations to the docket refer to Case No. 16-736.

exercises its discretion to decide the motion without oral argument. *See* FED. R. CIV. P. 78; L. CIV. R. 78.1. For the reasons to be discussed, Counterclaim Plaintiffs' motion is **DENIED**.

## I. BACKGROUND

The parties are familiar with this case's long and complex factual and procedural history, so the Court will recite only the facts bearing directly on the present motion. On September 25, 2015, Kamgirsons, Inc. ("Kamgirsons") entered into an agreement of sale with KL Holdings, for the purchase of certain real property in Camden, New Jersey (the "Bridgeview Property"). [Counterclaim Def. Br. in Opp'n at 4.[ECF No. 243]. At the time, the Bridgeview Property served as collateral for business loans obtained by KL Holdings from PNC Bank (the "Business Loans"). *Id.* at 5. In November 2015, Kamgirsons terminated the agreement of sale with KL Holdings. Shortly thereafter, in January 2016, 800 Cooper purchased the Business Loans from PNC Bank. *Id.*

On February 10, 2016, 800 Cooper filed suit against Shu-Lin Liu and Jolin Chiaolin Tsao, the personal guarantors of the Business Loans, in Case No. 16-736. [ECF No. 1]. Alleging that the Business Loans were in default, 800 Cooper sought a Confession of Judgment against Shu-Lin Liu and Jolin Chiaolin Tsao. [ECF No. 230]. On January 23, 2017, in Case No. 17-456, Counterclaim Plaintiffs filed a complaint against 800 Cooper. Case No. 17-456 [ECF No. 1]. On June 6, 2017, they filed an amended complaint to include Jimmy Kwong ("Kwong") and Katharina Gregorio ("Gregorio") as additional defendants. Case No. 17-456 [ECF No. 3]. On April 9, 2018, in Case No 16-736, Shu-Lin Liu and Jolin Chiaolin Tsao also filed an amended Counterclaim against 800 Cooper, Kwong and Gregorio. [ECF No. 15]. In both the amended complaint and amended counterclaim, Counterclaim Plaintiffs alleged Breach of Contract, Conversion and Unjust Enrichment as to 800 Cooper. *Id.* They also alleged that Kwong and Gregorio improperly cancelled the business entity, 800 Cooper, and improperly distributed this entity's assets in violation of the

Delaware Limited Liability Company Act. *Id.* On March 22, 2022, the claims against Kwong and Gregorio were dismissed pursuant to an Order granting motion for partial summary judgment [ECF No. 162].

In the course of discovery, Counterclaim Plaintiffs learned that KVest, Camden LLC ("KVest") was the sole member of 800 Cooper. *See* Countercl. Pls.' Br. in Support at 4 [ECF No. 242-1]. In a series of discovery motions, Plaintiffs sought an unredacted copy of KVest's operating agreement, primarily for the purpose of identifying all KVest members. Counterclaim Defendant ultimately appealed this Court's Order requiring the production of this document. [ECF No. 148]. On February 28, 2022, the Honorable Joseph H. Rodriguez, U.S.D.J. affirmed this Court's Order, and required 800 Cooper to produce the unredacted document by March 7, 2022. *See* Feb. 28, 2022 Order [ECF No. 159]. The document was ultimately produced on December 7, 2022, following an Order awarding sanctions against 800 Cooper stemming from this party's failure to produce the court-ordered discovery. *See* [ECF Nos. 206, 207, 210-1]; *see also* Countercl. Pls.' Br. in Support at 3. [ECF No. 242-1]. Following the receipt of the unredacted operating agreement, Counterclaim Plaintiffs filed a motion to reopen discovery[2] "for the limited purpose of . . . deposing [] newly identified KVest members, obtaining all relevant discovery that may arise as a result of these depositions and fully prosecuting its case." Countercl. Pls.' Br. to Re-Open Disc. at 1. [ECF No. 210-1]. This motion was granted on March 15, 2023 [ECF No. 224] and fact discovery was extended to June 30, 2023 [ECF No. 229].

Once discovery was reopened, Counterclaim Plaintiffs obtained copies of emails from Kwong to KVest members. One of these emails dated January 20, 2016 stated:

---

[2] Pursuant to the May 18, 2021 Scheduling Order, discovery closed on June 30, 2021. [ECF No. 123].

3

> We are expecting to close on our purchase of the Camden building's loans by the end of this week or early next week. The process is to have a single member LLC, 800 Cooper Finance LLC, with Kamgirsons as the sole member and 100% owner, purchase the loans. That is because PNC only approved Kamgirsons and its principals as purchaser. After closing, KVest Camden LLC, of which you and I will be members, will purchase 100% of Kamgirsons' membership interest in 800 Cooper at par, along with reimbursing Kamgirsons for prior due diligence and out of pocket costs related to the building and loans purchased. If everything works out, KVest Camden will obtain ownership of the underlying building. Of course, the borrower, if it is able, may choose to repay the loans we purchased, in which case, we would have expended the out of pocket costs for nothing.

Countercl. Pls.' Certification Ex. B. at 66 [ECF No. 242-3] Another email dated January 22, 2016 stated:

> 800 Cooper Finance LLC has closed on its purchase of the PNC loans, funded by Kamgirsons & Company, Inc.'s capital and 100% membership in the LLC. As soon as we receive all members' capital and signature pages for KVest Camden LLC's operating agreement, Kamgirsons will transfer its ownership of 800 Cooper Finance to KVest Camden in exchange for the payments as described in the operating agreement.
>
> Let's keep our fingers crossed that this will ultimately lead to ownership of the Bridgeview building.

Countercl. Pls.' Certification Ex C. at 68 [ECF No. 242-3]. On May 23, 2023, 800 Cooper filed a Suggestion of Bankruptcy, resulting in the administrative termination of this case on May 24, 2023 [ECF No. 231]. This case was reopened on January 26, 2024, following notice to the Court that the bankruptcy matter was dismissed [ECF No. 238].

Counterclaim Plaintiffs now seek to file an amended complaint/counterclaim asserting the following new claims:

- Breach of Contract – Against Kamgirsons;

- Fraudulent Inducement and Misrepresentation – Against Kamgirsons and Kwong;

- Fraud and Piercing the Corporate Veil – Against Kwong and Gregorio;

- Civil Conspiracy – Against 800 Cooper, Kwong, Gregorio and Kamgirsons.

*See* Countercl. Pls.' Certification at 17, 18, 32, 34 [ECF No. 242-3]. Counterclaim Plaintiffs argue that leave to amend should be granted because the documents supporting the amendment should have been disclosed prior to 800 Cooper filing its suggestion of Bankruptcy. *See* Countercl. Pls.' Br. in Support at 12. [ECF No. 242-1]. They contend, "[h]ad the Defendants provided the names and addresses of KVest's members back in 2018, or again in 2020, or again in 2021, the parties would not be here in 2024." *Id.* They state that despite "repeated attempts to obtain the names and addresses of relevant persons via Kvest's Operating Agreement, the crucial information that is the subject of the present Motion was not provided by the Defendants until May 2023." *Id.* at 15. Counterclaim Plaintiffs argue that because the case was stayed on May 23, 2023, shortly after receipt of discovery from Counterclaim Defendant, they were unable to seek to amend. *See id.* at 17. They allege that "the emails the Defendant finally produced in May 2023, serve as smoking-gun evidence as to their scheme." *Id.* at 2. They now seek to assert new claims against the dismissed Kwong and Gregorio, and to add Kamgirsons as a defendant. *See* Countercl. Pls.' Br. in Support at 16. [ECF No. 242-1]. Counterclaim Plaintiffs contend that the proposed defendants have been "aware of and/or [have been] active participants in this matter since its inception" and therefore will not be prejudiced by the proposed amendment. *Id.* at 17-18.

Counterclaim Defendant objects to the proposed amendment citing to Counterclaim Plaintiffs' "failure to assert such claims during the previous eight (8) years of this litigation." Countercl. Def. Br. in Opp'n at 7. [ECF No. 243]. It contends that "Counterclaim Plaintiffs were equipped with enough knowledge and information to assert the proposed new claims since the inception of this action in 2016[,]" and certainly by April 2018 when the Counterclaim was filed. *Id.* at 20. As to Counterclaim Plaintiffs' claim of receiving "smoking gun" emails in May 2023, 800 Cooper states, "[t]here is not a single piece of information contained in these emails that

Counterclaim Plaintiffs did not already know of or allege for years prior to the emails' production." *Id.* at 24. Counterclaim Defendant concludes that Counterclaim Plaintiffs are unable to satisfy the requirements of Rule 15(a)(2). *Id.* at 9. It argues that (1) the new claims are futile, (2) there was undue delay in filing the motion, (3) the proposed amended complaint would result in undue prejudice to the current and proposed new defendants and (4) the motion was filed in bad faith. *Id.*

Counterclaim Defendant also argues it would be unduly prejudiced by the proposed amendment. *See Id.* at 27. It asserts that "the parties would have to engage in complete discovery related to [the new] claims, starting from scratch." *Id.* at 25-26. It notes that "Kamgirsons is not a party to this action and the Counterclaim Defendants have not performed any discovery in support of a defense of a breach of contract claim arising out of the Bridgeview Agreement of Sale." *Id.* at 26. It asserts that "[t]hese claims require extensive discovery as to Counterclaim Plaintiffs' involvement in the Bridgeview Agreement of Sale and 800 Cooper's purchase of the PNC Loans, including Counterclaim Plaintiffs' understanding of the separate transactions, their purported reliance on the documents and representations made in those transactions, and the alleged damages that resulted therefrom." *Id.* It concludes, "the parties would have to relitigate this entire case in order to prosecute and defend Counterclaim Plaintiffs' newly asserted theories of liability." *Id.* Counterclaim Defendant also asserts that it would be forced to incur additional legal fees and costs if the motion was granted. *Id.*

## II. DISCUSSION

### A. Legal Standard

The decision to grant leave to amend rests within the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research Inc.*, 401 U.S. 321, 330 (1970) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962) (Dictum)). Motions to amend pleadings should be liberally granted and "leave to amend

must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir.2006) (citing *Foman*, 371 U.S at 182). In determining whether leave should be granted, courts consider the following factors: (1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice to the opposing party; and/or (5) futility of the amendment. *See Foman*, 371 U.S. at 182; *see also Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010). "The *Foman* factors are not exhaustive," and a court may consider additional equitable factors "such as judicial economy/burden on the court and the prejudice denying leave to amend would cause to the plaintiff." *Mullin v. Balicki*, 875 F.3d 140, 149-50 (3d Cir. 2017) (footnotes omitted). Additionally, "[a]ll factors are not created equal, however, as 'prejudice to the non-moving party is the touchstone for the denial of an amendment.'" *Id.* at 150 (footnote omitted).

**B.     Analysis**

Counterclaim Plaintiffs argue that leave to amend should be granted as crucial information supporting their proposed amendment was not received until May 2023. *See* Countercl. Pls.' Br. in Support at 16. [ECF No. 242-1]. Counterclaim Defendant disputes this assertion, stating that Counterclaim Plaintiffs possessed the knowledge and information to assert the proposed claim since the inception of this litigation. *See* Countercl. Def. Opp'n Br. at 22. [ECF No. 243]. The Court finds that the information forming the basis for the proposed claims were known to Counterclaim Plaintiffs early in the litigation process, and certainly by October 25, 2021, when Counterclaim Plaintiffs filed their brief in opposition to Kwong and Gregorio's motion for summary judgment [ECF No. 144]. The Court finds the delay in seeking to assert these claims to be unreasonable and undue and further finds that 800 Cooper would be unduly prejudiced if the amendment were

allowed. Accordingly, the Court will deny Counterclaim Plaintiff's motion. A discussion of the relevant *Foman* factors follows.[3]

### (1) Undue Delay and Repeated Failure to Cure

"Delay becomes 'undue,' and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008); *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) ("[T]he question of undue delay requires that we focus on the movant's reasons for not amending sooner."). "The passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become "undue," placing an unwarranted burden on the court, or will become "prejudicial," placing an unfair burden on the opposing party. *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984) (citation omitted). "The 'undue delay' factor recognizes that a gap between when amendment becomes possible and when it is actually sought can, in certain circumstances, be grounds to deny leave to amend." *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017). The Court now addresses *Foman's* "undue delay" factor as to each of proposed claims.

### (a) Breach of Contract – Against Kamgirsons

In support of this claim, Counterclaim Plaintiffs allege:

47. The Fraudulent Agreement of Sale is a written contract that exists between KL and Kamgirsons.

48. Kamgirsons agreed that "it shall not communicate the terms or any other aspect of this transaction prior to the Closing with any person or entity . . . [and that Kamgirsons] covenants that it shall conduct its investigations as described herein with the highest degree of confidentiality."

---

[3] Finding undue delay and undue prejudice warrant a denial of Counterclaim Plaintiffs' motion, the Court finds an analysis of the remaining *Foman* factors—bad faith and futility—to be unwarranted.

49. Kamgirsons had a duty to keep this information confidential.

50. Kamgirsons breached the Fraudulent Agreement of Sale.

51. Even after Kamgirsons terminated the Fraudulent Agreement of Sale, it had a duty, as it did not close on the Bridgeview Property.

52. Kamgirsons breached the Fraudulent Agreement of Sale and improperly released and/or utilized confidential information obtained during due diligence.

Countercl. Pls.' Proposed Am. Compl. ¶¶ 14-52, 184 [ECF No. 242-3]. Counterclaim Plaintiffs contend that the information needed to assert this claim was not obtained until May 2023. Countercl. Pls.' Br. at 15. However, the information alleged in their proposed breach of contract claim against Kamgirsons were known by Counterclaim Plaintiffs by the time they filed their June 6, 2017 Amended Complaint in Case No. 17-456 and the April 9, 2018 Amended Counterclaim in Case No. 16-736. In both amended documents, Counterclaim Plaintiffs alleged:

> In 2015, while some of the loans were the subject of modification and extension discussions with PNC, KL Holdings entered into an Agreement of Sale with Kamgirsons, Inc. (the "Kamgirsons Agreement of Sale"), a principal of which was Jimmy Kwong. After some due diligence, which included providing Kwong with information regarding the KL/PNC Loans, Kamgirsons terminated the Agreement of Sale in November of 2015.
>
> Based upon the information provided to him during due diligence during the term of the Kamgirsons Agreement of Sale, Kwong negotiated the purchase of the KL/PNC Loans from PNC Bank and created 800 Cooper Finance to acquire and hold the loans (the "KL/800 Cooper Finance Loans").

*See* Case No. 17-456, Am. Compl. ¶¶ 11, 12 [ECF No. 3]; *see also* Case No. 16-736 Am. Answer and Countercl. ¶¶ 9, 10 [ECF No. 54]. A comparison of the allegations in the existing and proposed claims support 800 Cooper's contention that Counterclaim Plaintiffs possessed the information necessary to assert this proposed claim early in the litigation. Counterclaim Plaintiffs fail to adequately account for the substantial delay in bringing this counterclaim against Kamgirsons. Although they state they were unable to move to amend once the bankruptcy stay was entered on

9

May 24, 2023, no explanation is given for the failure to include this claim in the amended complaint/counterclaim or to move to further amend shortly thereafter. Since the filing of their amended complaint in June 2017, Counterclaim Plaintiffs had many opportunities to seek to add this proposed claim. However, no leave to amend was sought prior to this case being stayed in May 2023. The Court finds the substantial delay in bringing the breach of contract claim against Kamgirsons to be unreasonable and undue, warranting denial of leave to amend as to this claim. *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (three[-]year lapse between filing of complaint and proposed amendment was "unreasonable" delay where plaintiff had "numerous opportunities" to amend); *see also Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 654–55 (3d Cir. 1998) (rejecting proposed second amended complaint where plaintiffs were repleading facts that could have been pled earlier); *see also CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 629 (3d Cir. 2013) ("denials of motions for leave to amend where the moving party offered no cogent reason for the delay in seeking the amendment").

    **(b)    Fraudulent Inducement and Misrepresentation – Against Kamgirsons and Kwong**

In support of this claim, Counterclaim Plaintiffs allege:

55. The Defendants concocted a scheme to make KL Holdings believe that Kamgirsons actually intended to purchase the Bridgeview Property and induced KL Holdings to believe such.

56. The Defendants intentionally and repeatedly misrepresented Kamgirsons' intention to purchase the Bridgeview Property, but rather, only entered into the Fraudulent Agreement of Sale to obtain and improperly exploit the confidential information obtained during due diligence.

57. This was done in an effort to induce KL Holdings to provide, among other things, confidential loan and environmental information.

58. This becomes obvious when compared with the timing of the events and the fact that within three (3) months of the termination of the Fraudulent Agreement of Sale, Kwong was able to form two separate companies, 800

10

> Cooper and KVest, secure multiple persons to enter into and provide hundreds of thousands of dollars in connection with the formation of these separate companies, and begin negotiations with KL's lender, PNC in order to purchase the loans on January 22, 2016.
>
> 59. As set forth herein, the Defendants knew, prior to entering into the Fraudulent Agreement of Sale, that the representations were inaccurate, misleading and untrue and that Kamgirsons had no intention to maintain confidentiality or actually acquire the Bridgeview Property pursuant to the Fraudulent Agreement of Sale.
>
> 60. These misrepresentations and omissions to state material facts were part of the Defendants' scheme to induce KL Holdings to provide confidential information regarding the Bridgeview Property.
>
> 61. The hope was that the confidential information obtained could be provided to an alternative company so that company could exploit the information and it would "ultimately lead to ownership of the Bridge View building" for far less cost.

Countercl. Pls.' Proposed Am. Compl. ¶¶ 55-61. [ECF No. 242-3]. As discussed above, the allegations in this proposed claim were previously known to Counterclaim Plaintiffs. At the heart of these allegations is the contention that Kamgirsons, and its principal Kwong, did not intend to purchase the Bridgeview Property, but rather intended to "obtain and improperly exploit the confidential information obtained during due diligence." *Id.* at ¶ 58. While Counterclaim Plaintiffs now propose to use these allegations to support a claim of "fraudulent inducement and misrepresentations," the underlying allegations were contained in both Paragraphs 11 and 12 of the June 2017 Amended Complaint and Paragraphs 9 and 10 of the Amended Counterclaim. *See* Countercl. Pls.' Certification at 18 [ECF No. 242-3]; *see also* Case No. 17-456 [ECF Nos. 3, 22]. While information in some of the allegations may have been obtained during initial discovery, none of the asserted new information received in May 2023, form the basis of this proposed claim. As with the proposed of breach of contract claim against Kamgirsons, Counterclaim Plaintiffs fail to adequately account for the substantial delay in bringing this claim. For the reasons stated above, the

Court finds the delay in bringing the fraudulent inducement and misrepresentation claim to be unreasonable and undue, warranting denial of leave to amend as to this claim.

### (c) Fraud and Piercing the Corporate Veil – Against Kwong and Gregorio

In support of this claim, Counterclaim Plaintiffs allege:

103. Kwong, as the principal for Kamgirsons, was 800 Cooper's first managing member.

104. Thereafter, Gregorio became 800 Cooper's managing member in order to allow Kwong to become the managing member of KVest.

105. Kwong, as principal for Kamgirsons, worked in concert with 800 Cooper's new managing member, Gregorio, to concoct a scheme to utilize confidential information obtained by Kamgirsons and Kwong during due diligence against KL Holdings.

106. The formation of 800 Cooper was used to defeat the ends of justice, perpetrate fraud, and/or otherwise evade the law.

107. Kwong knew or should have known that the exploitation of confidential information gained during due diligence was improper.

108. Gregorio knew or should have known that the exploitation of confidential information provided by Kwong and/or Kamgirsons during due diligence was improper.

109. Kwong and/or Gregorio sought to otherwise evade the law by distributing substantially all of 800 Cooper's assets, rendering it an insolvent shell, unable to satisfy any potential liability to KL Holdings in this action.

110. This was evidenced through 800 Cooper's attempted bankruptcy filing. . . .

111. It is evident by, among other things, the emails referenced herein and obtained during discovery that Kwong and Gregorio were heavily immersed in the day-to-day operations and scheme by 800 Cooper, Kamgirsons and KVest.

112. 800 Cooper, Kamgirsons and KVest (which became 800 Cooper's sole member after Kamgirsons sold its interest to it) intermingled its directors, officers, managers, and/or personnel.

113. Kwong dominated Kamgirsons, 800 Cooper and/or KVest to such an extent that their independent existence was in fact non-existent and he, as managing member, was in fact an alter ego of these entities

114. Gregorio dominated 800 Cooper to such an extent that its independent existence was in fact non-existent and she, as managing member and/or officer, was in fact an alter ego of this entity.

Countercl. Pls.' Proposed Am. Compl. ¶¶ 103-114. [ECF No. 242-3]. While this proposed claim is directed at Kwong and Gregorio in their respective capacities as principal of Kamgirsons and managing member of 800 Cooper, at the heart of this claim is the utilization of "confidential information obtained by Kamgirsons and Kwong during due diligence against KL Holdings." *Id.* ¶ 105. As discussed above, this information formed the basis of allegations made by Counterclaim Plaintiffs in June 2017 and April 2018.

Allegations in proposed paragraphs 106 and 109 that Kwong and/or Gregorio committed fraud and sought to avoid satisfying potential liability were also previously alleged. In their October 25, 2021 brief opposing Kwong and Gregorio's motion for summary judgment, Counterclaim Plaintiffs wrote:

> [E]vidence of record demonstrates the considerable efforts of Kwong and Gregorio to perpetrate the fraud and injustice occurring here. . . . The cancellations of 800 Cooper and KVest by Kwong and Gregorio has resulted in fraud and injustice from the diversion of funds from those entities to the individuals in an explicit attempt to avoid payment of the excess payoff back to the KL Holdings Defendants.

Countercl. Pls.' Br. in Opp'n to Def. Mot. Summ. J. at 30. [ECF No. 144]. Counterclaim Plaintiffs' proposed amendment also alleges that email and other discovery demonstrates that Kwong and Gregorio were heavily immersed in the day-to-day operations and scheme by 800 Cooper, Kamgirsons and KVest. See Countercl. Pls.' Br. in Support at 17. [ECF No. 242-1. However, even without the benefit of emails received in May 2023, Counterclaim Plaintiffs made similar contentions in prior pleadings:

> [T]he control of 800 Cooper was exclusively vested in Gregorio and its lone member, KVest. Kwong and Gregorio are both members of KVest with Kwong as the Managing Member who, in accordance with the KVest Operating Agreement, had the sole discretion to control the management and all decisions concerning the business affairs of KVest, as well as bind KVest. . . Accordingly, through his control of KVest and KVest's control of 800 Cooper, Kwong was solely responsible for managing the loans and the property secured by those loans and any decision to cancel and dissolve 800 Cooper could only be made and carried out by Kwong and Gregorio.

Countercl. Pls.' Br. in Opp'n to Def. Mot. Summ. J. at 12. [ECF No. 144]. Additionally, in their October 2021 brief, Counterclaim Plaintiffs argued that ample evidence existed to "pierce the corporate veil."[4] *Id.* at 29. They wrote:

> [T]here is sufficient grounds for piercing the corporate veils of 800 Cooper and KVest to reach Kwong and Gregorio. . . . Kwong and Gregorio [admitted] that both LLCs were cancelled without provision for the creditors . . . and . . . admitted receipt of funds from those unlawful cancellations . . . . Further, 800 Cooper and KVest were headquartered at the same address, and had significant overlap of personnel. . . . When Kwong was unable to complete his intended purchase of the at-issue property through a different LLC, Kwong attempted to circumvent the failed transaction by aggressively, and through the confidential information he had previously obtained in the failed transaction, purchased the loans for that property via two LLCs created to carry out this injustice. . . . [E]ven if piercing the corporate veil is applicable here, which it is not, there is a compelling case that 800 Cooper, KVest and Kwong and Gregorio all operated as a single economic entity such that it would be inequitable . . . for this Court to uphold a legal distinction between them.

*Id.* at 29-30. These arguments indicate that information forming the basis of this proposed claim was known to Counterclaim Plaintiffs by October 2021. As with the preceding proposed claims, Counterclaim Plaintiffs fail to adequately account for the substantial delay in seeking to bring this claim. For the reasons stated above, the Court finds the delay in bringing this proposed claim to be unreasonable and undue, warranting denial of leave to amend as to this claim.

---

[4] Notably, although arguing in their 2021 brief that evidence existed to pierce the corporate veil, Counterclaim plaintiffs also stated that "there is no need for or application of piercing the corporate veil as liability is established by statute." Countercl. Pls.' Br. in Opp'n to Def. Mot. Summ. J. at 29-31. [ECF No. 144].

    **(d)    Civil Conspiracy – Against 800 Cooper, Kwong, Gregorio and Kamgirsons**

In support of this claim, Counterclaim Plaintiffs allege:

117.    The Defendants have combined to act in concert to commit unlawful and wrongful acts against KL Holdings.

118.    As detailed throughout this pleading, the Defendants knowingly conspired to exploit confidential information against KL Holdings. Kamgirsons fraudulently induced KL Holdings to enter into the Fraudulent Agreement of Sale, Kwong formed 800 Cooper to perpetrate a fraud against KL Holdings, and Kwong and Gregorio, as managing members and/or officers and as alter egos of Kamgirsons and 800 Cooper, continued these bad acts and deliberately breached valid agreements, namely the KL/800 Cooper Loans in an effort to aggressively and improperly acquire the Bridgeview Property and/or force KL Holdings to pay excessive and improper calculations of interest due under the loans, excessive amounts claimed for collection fees.

Countercl. Pls.' Proposed Am. Compl. ¶¶ 117-118. [ECF No. 242-3]. As with the preceding proposed claims, information forming the basis of these allegations were previously known to Counterclaim Plaintiffs. Further, Counterclaim Plaintiffs fail to adequately account for the substantial delay in bringing this claim. For the reasons stated above, the Court finds the delay in bringing the proposed claim for fraud and piercing the corporate veil to be unreasonable and undue, warranting denial of leave to amend as to this claim motion.

    **(2)    Undue Prejudice**

Although the Court finds undue delay warranting a denial of Counterclaim Plaintiffs' motion, the Court will nevertheless address the undue prejudice to Counterclaim Defendant. "Incidental prejudice is not a sufficient basis for the denial of a proposed amendment. Prejudice becomes undue when a party shows that it would be 'unfairly prejudiced' or deprived of the opportunity to present facts or evidence which it would have offered." *Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 106 F. Supp. 2d 737, 745 (D.N.J. 2000). In determining whether an amendment would cause undue prejudice, the Court considers "whether the assertion of the new claim would:

(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (citation omitted). The burden is on the non-moving party to show that amendment would be prejudicial. *See Am. Gen. Life Ins. Co. v. Altman Fam. Ins. Tr. ex rel. Altman*, No. 2009 WL 5214027, at *3 (D.N.J. Dec. 22, 2009).

Counterclaim Plaintiffs contend that the proposed defendants have been aware of and/or actively participated in this matter since its inception. *See generally,* Countercl. Pls.' Br. in Support. [ECF No. 242-1]. Accordingly, they argue, 800 Cooper will not be prejudiced by the proposed amendments. *See id.* To the contrary, 800 Cooper argues that it would be unduly prejudiced by the proposed amendments. Counterclaim Def. Br. in Opp'n at 27. [ECF No. 243]. It states it would have to engage in complete discovery related to the new claims. *See id.* at 25-26. It elaborates that Kamgirsons is not a party to this action and that it has not conducted discovery related to a breach of contract claim. See *id.* at 26. Significantly, it states that the defendants—two of whom were already dismissed from the case—would be forced to incur additional legal fees and costs. *See id.* The Court is persuaded by 800 Cooper's argument and finds that 800 Cooper has demonstrated that it will be unduly prejudiced if Counterclaim Plaintiffs were granted leave to amend. The Court also finds that the proposed amendment will place an unwarranted burden on the Court. This case has been in litigation since February 10, 2016. On March 22, 2022, summary judgment motion was decided. A final pretrial conference was held on October 12, 2022, with anticipation that a trial would be forthcoming. Allowing the proposed claims to proceed will result in the reopening of discovery in an eight-year-old case that should be poised for trial.

## III.   CONCLUSION

Accordingly, for all the foregoing reasons,

**IT IS HEREBY ORDERED** this **3rd** day of **June, 2024**, that Counterclaim Plaintiffs' motion to Amend the Complaint/Counterclaims is **DENIED**.

s/ Sharon A. King  
SHARON A. KING  
United States Magistrate Judge

cc:  Hon. Joseph H. Rodriguez, U.S.D.J.